JOHN H. HARDY, PLAINTIFF v. BRANTLEY CONSTRUCTION COMPANY, EMPLOYER; NATIONWIDE MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANT; JOHN ROGER McKINNEY, THIRD PARTY TORT-FEASOR

———

ALBERT R. WELLS, EMPLOYEE, PLAINTIFF v. BRANTLEY CONSTRUCTION COMPANY, EMPLOYER; NATIONWIDE MUTUAL INSURANCE COMPANY, CARRIER, DEFENDANT; JOHN ROGER McKINNEY, THIRD PARTY TORT-FEASOR

Nos. 8710IC26
8710IC27

(Filed 17 November 1987)

1. **Master and Servant § 89.4— workers' compensation—attorney's contingent fee —authority of Industrial Commission to review reasonableness**
    The Industrial Commission erred in drawing the legal conclusion that it lacked statutory authority to review the reasonableness of a contingent fee for the attorney for the plaintiff when the fee is to be subtracted from the subrogation interests of the workers' compensation carrier.

Hardy v. Brantley Construction Co. and Wells v. Brantley Construction Co.

2. **Master and Servant § 89.4— workers' compensation—attorney's fee—amounts taken from employee's share and subrogation interest of employer—application of reasonableness rule**

Pursuant to N.C.G.S. § 97-90, the attorney fee taken from the employee's share of a judgment may not exceed one-third of the amount recovered, but it is not otherwise subject to the reasonableness requirement of N.C.G.S. § 97-90(c); however, the attorney fee on the subrogation interest of the employer (or its carrier) is subject to the reasonableness requirement of that statute and may not exceed one-third of the amount recovered from the third party. N.C.G.S. § 97-10.2(f)(1)b.

Judge PHILLIPS dissenting.

APPEALS by defendant from Opinions and Awards of the North Carolina Industrial Commission entered 3 October 1986. Heard in the Court of Appeals 13 May 1987.

*Connor, Bunn, Rogerson & Woodard by James F. Rogerson; and Allen G. Thomas for plaintiff appellee.*

*Leboeuf, Lamb, Leiby & MacRae by Jane Flowers Finch and Albert D. Barnes for defendant appellant.*

COZORT, Judge.

These two cases have been consolidated for opinion because they arise from the same transactions and involve a common issue of law.

Plaintiffs John H. Hardy and Albert R. Wells were seriously injured on 28 October 1983 when struck by an automobile being driven by John Roger McKinney. At the time of the accident Hardy and Wells were employed by defendant Brantley Construction Company and were on the job at the time of the accident. Defendant Nationwide Insurance Company, the workers' compensation carrier for Brantley, paid workers' compensation benefits of $54,777.78 to Hardy and $17,373.13 to Wells. On 7 November 1983 a claims representative of Nationwide notified the Great American Insurance Company, McKinney's automobile liability insurance carrier, of Nationwide's subrogation lien for the workers' compensation payments made to Hardy and Wells. In a telephone conversation on 7 December 1983 between a claims representative from Nationwide and W. H. Lewis, Jr., a Great American claims representative, Lewis told the Nationwide representative that "it looks like we are going to pay these claims."

On 12 December 1983, Hardy signed a contract for legal services, retaining Allen G. Thomas, a Wilson attorney, to represent him in his claim for damages resulting from the 28 October 1983 accident. The contract provided for Thomas and his law partner to receive one-fourth of the amount recovered on a settlement without filing suit, and one-third of the amount recovered upon a legal action. On 23 January 1984 Wells signed a contract with Thomas identical in all material respects to Hardy's contract with Thomas. On 20 December 1983 Great American settled with Nationwide on Nationwide's subrogation lien with respect to damage to the Brantley vehicle struck by McKinney on 28 October 1983. In the early months of 1984, Lewis learned that Hardy and Wells were represented by Thomas. Lewis wrote to Thomas requesting medical bills and wage information so that the claims could be evaluated. On 27 February 1984 Thomas was notified by letter that Nationwide had turned its subrogation interests over to George R. Ragsdale, a Raleigh attorney. On 6 April 1984 Lewis again wrote to Thomas requesting the medical information and wage data. Lewis never received the information requested from Thomas. Lewis received a letter dated 30 April 1984 from Thomas advising Lewis that Thomas had filed suit with respect to the claims of Hardy and Wells. On 29 June 1984, the attorneys for McKinney, defendant in the action filed by Thomas, filed an answer denying liability.

On or about 18 February 1986, the action filed by Thomas against McKinney was settled, with Great American agreeing to pay $50,000.00, the maximum amount of coverage under McKinney's policy. By letter dated 9 April 1986, Thomas notified the Industrial Commission of the settlement and requested disbursement of the $50,000.00 to be paid by Great American. In that letter Thomas contended he was entitled to one-third of the money going from Great American to Hardy, Wells, and Nationwide, in accordance with his contingent fee contracts with Hardy and Wells. Under Thomas' request, the $50,000.00 would be distributed as follows: (1) $600.00 which had previously been paid to another party who was injured; $5,000.00 for Hardy; $7,300.00 for Wells; and $37,100.00 for Nationwide's subrogation lien. Each of the last three amounts would be reduced by one-third, with Thomas receiving the one-third. The attorney for Nationwide wrote to the Commission on 15 April 1986 requesting a hearing,

contending that Thomas was not entitled to one-third of the amount due Nationwide. In an affidavit filed with the Commission on 2 May 1986, Lewis, the Great American claims representative, stated: "In November of 1983, this case was deemed a case of 100% liability. Had the medical information with respect to Mr. Wells and Mr. Hardy been provided to me earlier, settlement by tendering the full amount of the policy limits would have been precipitated sooner."

In Orders filed 15 May 1986, Commissioner William H. Stephenson held that Thomas was entitled to one-third of all payments as his fee, including one-third of the amount going to Nationwide. Nationwide appealed to the Full Commission. In unanimous Opinions and Awards filed 3 October 1986, the Full Commission adopted as its own and affirmed the 15 May 1986 Orders of Commissioner Stephenson. In finding no reversible error, the Commission stated:

> Based on the information presently before the Industrial Commission it appears that, with Nationwide performing the majority of the work in obtaining the settlement, from an equitable standpoint the fee which Attorney Thomas received was excessive. However, the Industrial Commission does not have jurisdiction in this regard and the proper forum for the defendants' argument is the legislature.

[1] Brantley and Nationwide appealed to this Court. We find the Commission's conclusion of law that it had no jurisdiction to assess the reasonableness of Thomas' fee to be in error.

Legal conclusions made by the Industrial Commission are subject to appellate review. *Pollard v. Krispy Waffle #1*, 63 N.C. App. 354, 356, 304 S.E. 2d 762, 763 (1983). Therefore, the question of the Commission's authority to review the fee claimed by Thomas is properly before this Court.

In his Orders distributing attorney fees to Thomas, Commissioner Stephenson stated:

> G.S. 97-10.2 specifically provides that the attorney for the party making the settlement shall be entitled to an attorney fee for his services. Counsel for plaintiff made the settlement. He is therefore entitled to the fee and it must be paid "in direct proportion to the amount each party receives from the

settlement." As stressfully as Nationwide contends in its argument that it is obligated to pay no fee, the statute is contrary to this position and the motion that no fee be assessed against Nationwide is hereby DENIED.

Commissioner Stephenson made no reference to the "reasonableness" of the fee in his Order. In the Full Commission's Opinions and Awards affirming Commissioner Stephenson, the Commission observed that the fee appeared excessive. Without citing any statutory authority for its conclusion, the Commission then held it lacked jurisdiction "in this regard." We find the Opinions and Awards of the Commission to be a legal conclusion that the Commission lacks statutory authority to review the reasonableness of a contingent fee for the attorney for the plaintiff when the fee is to be subtracted from the subrogation interests of the workers' compensation carrier. This legal conclusion is in error.

[2] The authority of the Industrial Commission and its hearing officers to review fees for attorneys is found in N.C. Gen. Stat. § 97-90. Subsection (c) provides:

> (c) If an attorney has an agreement for fee or compensation under this Article, he shall file a copy or memorandum thereof with the hearing officer or Commission prior to the conclusion of the hearing. If the agreement is not considered unreasonable, the hearing officer or Commission shall approve it at the time of rendering decision. If the agreement is found to be unreasonable by the hearing officer or Commission, the reasons therefor shall be given and what is considered to be reasonable fee allowed.

The rights and remedies of the employee and employer against third party tort-feasors, including provision for disbursement of amounts recovered, is found in N.C. Gen. Stat. § 97-10.2. Under N.C. Gen. Stat. § 97-10.2(f), the General Assembly directed the order and priority of disbursements of amounts recovered, addressing the subject of attorney's fees as follows:

> b. Second to the payment of the fee of the attorney representing the person making settlement or obtaining judgment, and *except for the fee on the subrogation interest of the employer* such fee shall not be subject to the provisions of § 90 of this Chapter [G.S. 97-90] but shall not ex-

ceed one third of the amount obtained or recovered of the third party.

N.C. Gen. Stat. § 97-10.2(f)(1)b (emphasis added). We read this statute to provide as a general rule that "the payment of the fee of the attorney representing the person making settlement or obtaining judgment . . . shall not be subject to the provisions of § 90 of this Chapter [G.S. § 97-90] but shall not exceed one third of the amount obtained or recovered of the third party." Thus, the general rule is that the fee the attorney charges the employee is not subject to the reasonableness requirement of N.C. Gen. Stat. § 97-90(c); the only restriction is that it may not exceed one-third of the amount recovered. The fee attributable to subrogation interests of the employer (or its carrier) is excluded from that provision exempting attorney fees from the reasonableness requirement of N.C. Gen. Stat. § 97-90(c) by the phrase "except for the fee on the subrogation interest of the employer." Thus, while the statute in question is not a model of clarity, we find its purpose plain: the attorney fee taken from the employee's share may not exceed one-third of the amount recovered, but it is not otherwise subject to the reasonableness requirement of N.C. Gen. Stat. § 97-90(c); the attorney fee on the subrogation interest of the employer (or its carrier) is subject to the reasonableness requirement of N.C. Gen. Stat. § 97-90(c) and may not exceed one-third of the amount recovered from the third party.

This result is supported by the legislative history of N.C. Gen. Stat. §§ 97-90 and 97-10.2(f)(1) and case law. N.C. Gen. Stat. § 97-90, in a much shorter form, was a part of the original Workmen's Compensation Act enacted by the General Assembly in 1929. 1929 N.C. Sess. Laws ch. 120, s. 64. Subsection (c) was added in 1959. 1959 N.C. Sess. Laws ch. 1268. In that same session, the General Assembly also enacted what is now N.C. Gen. Stat. § 97-10.2(f)(1)b. 1959 N.C. Sess. Laws ch. 1324. The phrase excepting the fee on the subrogation interest from the exclusion on reasonableness requirement did not appear in the 1959 version. Thus, as enacted in 1959, the statutes provided that no attorney fee in a third-party action was subject to the reasonableness requirement. Only the one-third limitation applied. In a 1978 case, this Court upheld the constitutionality of N.C. Gen. Stat. § 97-10.2(f), denying the employer's and the carrier's claim that the statute unjustifiably impaired their right to be represented by attorneys of

their choice in protecting their subrogation rights against third-party tort-feasors. *Hogan v. Motor Lines*, 38 N.C. App. 288, 294-95, 248 S.E. 2d 61, 64 (1978), *disc. rev. denied*, 296 N.C. 411, 251 S.E. 2d 469 (1979). Five months after the Supreme Court denied review in *Hogan*, the General Assembly amended N.C. Gen. Stat. § 97-10.2(f)(1)b to except the fee on the subrogation interest from the reasonableness exclusion. 1979 N.C. Sess. Laws ch. 865. We read this legislative action as manifesting the intent of the General Assembly that the fee to be taken from the subrogation interest is subject to the reasonableness determination by the Commission directed by N.C. Gen. Stat. § 97-90(c).

The result of the case at bar is:

(1) The decision of the Commission to disburse $5,000.00 to plaintiff Hardy, less one-third to attorney Thomas as his fee, is affirmed.

(2) The decision of the Commission to disburse $7,262.87 to plaintiff Wells, less one-third to attorney Thomas as his fee, is affirmed.

(3) The decision of the Commission to disburse the remaining $37,137.13 to Nationwide, less one-third to attorney Thomas as his fee, is vacated, and the matter is remanded to the Commission to review the fee on the subrogation interest in accordance with N.C. Gen. Stat. § 97-90(c).

Affirmed in part; vacated in part and remanded.

Judge GREENE concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

Though I agree that the fee of plaintiffs' counsel is subject to the provisions of G.S. 97-90, as G.S. 97-10.2(f) indirectly requires, I nevertheless am of the opinion that those statutes were correctly applied by the Industrial Commission and that its decision should be affirmed. Nothing in either statute, as I read them, supports the view that under the circumstances of these cases the Commission had either the authority or duty to determine the "reason-

ableness" of the fee involved; though it did have the authority to determine whether the fee *agreement*, a different matter altogether, was unreasonable and the Commission exercised that authority by approving the *agreement*, which is not materially different from myriads of agreements that are routinely approved by the Commission every year. The statutes plainly provide, as the Commission ruled, that when an employee's claim against a third party tort-feasor is settled while being processed by the employee under the provisions of G.S. 97-10(d), and the employee and his lawyer have a fee *agreement* that is *not* unreasonable which is approved by the Industrial Commission, that the fee of the employee's lawyer on the subrogation recovery will be as provided for in the agreement. It is only when there is no fee agreement or when an agreement is found to be unreasonable that the Commission has the authority to determine the reasonableness of the compensation due the claimant's lawyer. In these cases the agreements having been approved as not being unreasonable, the Commission had no authority to evaluate counsel's services as though no agreement existed or to increase or decrease the fee in a *quantum meruit* type of determination, but was obliged to enforce the agreements as written and approved.

The statutory policy is not only clear, it is also sound. It recognizes that a personal injury claim or lawsuit cannot be handled effectively unless someone with a chance of being paid is in charge of it and that ordinarily the employee, whose superior interest encompasses that of the subrogee, should have the first opportunity to pursue the claim with the assistance of counsel under contract as to the fee; and it discourages controversy between the employee and subrogee while the third party claim is being pursued by permitting the compensation of the employee's counsel to be determined by contract, rather than upon evidence presented by the subrogee. Replacing this sensible arrangement for the orderly and expedient handling of employee third party claims with one requiring the Commission to determine "reasonable" compensation in each instance would be folly in my judgment. Such an arrangement would encourage controversy between the subrogee and the employee while the third party claim is still pending; it would permit subordinate insurers to take control of the employee's claim, as Nationwide in effect undertook to do in this instance by instructing plaintiffs' counsel, who was handling

the indivisible claim against the third party, to do nothing with respect to its subordinate interest; and it would require the Commission in each third party claim to receive and evaluate evidence about legal services performed in another forum, and to not only decrease the fee when the services rendered are not commensurate with the amount provided for in the fee contract, but to increase the fee when the contract amount does not constitute "reasonable" compensation. Viewed in perspective, the circumstances of these cases do not justify even considering such a step. The settlement that Nationwide claims to have promoted was not the *final, complete settlement* of the tort-feasor's liability that the statute requires, but merely the collection of the tort-feasor's policy limits. That Great American, notwithstanding its contradictory conduct in denying the liability of its insured and pleading various affirmative defenses, may have been ready to pay its policy limits all along, as Nationwide argues, does not mean that counsel had a duty to forthwith settle the tort-feasor's total liability for those limits. And that plaintiffs' counsel did not send the incomplete medical bills and information to Great American in piecemeal fashion as requested could mean only that he did not want to do a pointless and perhaps even harmful thing, since the extent of his client's injuries could not be known until much later and supplying piecemeal, incomplete medical information about a serious injury often tends to trivialize it.