Archie L. **LANGSTON, Jr.**, Appellant,

v.

Walter A. **HAYDEN**, Respondent.

No. WD 48611.

Missouri Court of Appeals,
Western District.

Aug. 9, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1994.

Application to Transfer Denied
Nov. 22, 1994.

Sharon Pigeon, Marilyn Gussman, Kansas City, for appellant.

Barry W. McCormick, Overland Park, KS, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and ELLIS, JJ.

HANNA, Presiding Judge.

On July 24, 1990, the plaintiff, Archie Langston, was involved in an automobile collision with the defendant, Walter Hayden, in Kansas City, Jackson County, Missouri. Mr. Langston was employed in Kansas by the Xerox Corporation (Xerox). His sales territory included both Kansas and Missouri, and he regularly called on customers in both states. At the time of the automobile accident, he was engaged in his regular employment duties.

Mr. Langston reported the accident to his employer, Xerox, who reported the claim to the Kansas Department of Human Resources, Division of Workers' Compensation. The claim was submitted to Xerox's workers' compensation carrier, Lumbermen's Mutual Insurance Company (Lumbermen's), and the parties eventually reached a settlement.

On May 24, 1991, a settlement hearing was held before the Kansas Division of Workers' Compensation. Langston appeared and testified at that hearing, although he was not represented by counsel.[1] At the conclusion of the hearing, the ALJ, noting that Lumbermen's had already paid $2,543.24 in medical expenses, awarded the plaintiff the additional lump sum of $16,691.09 to compensate him for a 13% permanent partial general bodily disability.

On October 11, 1991, attorney Matthew Stretz, hired by Lumbermen's, filed suit against defendant in plaintiff's name in the Circuit Court of Jackson County, Missouri. On October 25, 1991, attorney Pigeon, on behalf of Langston, filed a motion to dismiss without prejudice, arguing that Lumbermen's had no right to file a suit in Missouri on behalf of plaintiff without his consent. The trial court overruled that motion on April 15, 1992, holding that under Kansas workers' compensation law, which was applicable in determining the rights of the parties, Lumbermen's was authorized to file an action in Missouri in Langston's name.

On November 13, 1991, Langston filed a claim with the Missouri Division of Workers' Compensation. On December 3, 1991, Lumbermen's filed an answer specifically denying that Langston's injury occurred during the course and scope of his employment. That claim is pending.

On October 21, 1992, attorney Stretz entered into a settlement agreement with the defendant in the amount of $22,500.00, which was an offer that Langston, through attorney Pigeon, had previously rejected. On May 13, 1993, attorney Stretz filed a motion to enforce settlement, which was overruled on July 27, 1993.

Defendant Hayden filed a motion to enforce settlement on August 9, 1993. Attorney Pigeon filed a renewed motion to dismiss without prejudice on September 8, 1993. On October 18, 1993, the court overruled Langston's motion to dismiss and sustained defendant's motion to enforce the settlement. The court ordered Langston to execute a release and accept tender of the settlement draft or, in the alternative, gave Lumbermen's attorney the authority to do so on Langston's behalf. The court determined that Lumbermen's was entitled to $19,553 in satisfaction of its workers' compensation lien, and Langston was to receive the excess in the amount of $2,947. Langston appeals the decision of the trial court, arguing that the court erroneously applied Kansas law in determining his interest to maintain a cause of action in Missouri for personal injuries against defendant Hayden.

The Kansas workers' compensation statute provides for the injured worker to pursue his remedy against a thirty party tortfeasor if his injury was caused by a third person's negligence. K.S.A. 44–504 (1993) states:

(a) When the injury or death for which compensation is payable under the workers compensation act was caused under circumstances creating a legal liability against some person other than the employer or any person in the same employ to pay damages, the *injured worker ... shall have the right to* take compensation under the workers compensation act and *pursue a remedy by proper action in a court of competent jurisdiction against such other person.*

(b) ... *Such action* against the other party, if prosecuted by the worker, *must be instituted within one year from the date of the injury ....*

(c) *Failure on the part of the injured worker ... to bring such action within the time specified by this section, shall operate as an assignment to the employer* of any cause of action in tort which the worker ... may have against any other party for such injury or death, and such *employer may enforce the cause of action* in the employer's name or in the name of the worker ....

(Emphasis added). The automobile accident occurred on July 24, 1990, and the employer's insurer filed the lawsuit in Missouri on October 11, 1991.

---

1. A copy of an "Attorney's Contingent Fee Contract" dated April 16, 1991, shows that at the time of his workers' compensation hearing, the plaintiff had hired a personal attorney, Sharon Pigeon, to handle his claim for personal injuries.

The Kansas Supreme Court has enforced that statutory provision. *See Erb v. Atchison, Topeka & Santa Fe Ry. Co.*, 180 Kan. 60, 299 P.2d 35, 37 (1956). The court stated, after acknowledging the statutory cause of action that the injured employee has against a negligent tortfeasor, that the action, if prosecuted by the employee:

> must be brought within one year from the date of the injury, and failure on his part to bring the action within such period operates as an assignment to the employer of any cause of action in tort which the workman may have against the third party, and the employer may enforce the same in its own name or in the name of the workman.

*Id.*

■ The initial issue is whether Langston's interests in his Missouri lawsuit should be governed by Kansas or Missouri law. Langston argues that Missouri is the forum state and the state with the most significant contacts, citing *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo.1969), and that, therefore, the court should have applied Missouri procedural and substantive laws. The defendant argues that because Langston was operating under the Kansas workers' compensation laws, the rights of the parties should be determined by and the court should grant comity to the statutory law of Kansas.

■ This state has long held that comity is more than mere courtesy or good will, but is a doctrine under which contracts are made, rights are acquired, and obligations incurred in one state and enforced in another state. *Morris Plan Co. v. Jenkins*, 216 S.W.2d 160, 163–64 (Mo.App.1948). It is the enforcement of a right acquired under the laws of another state. *Id.* at 164. An obstacle to the enforcement of those rights of comity occurs when the law of the other state violates some definite public policy of this state. *Yellow Mfg. Acceptance Corp. v. Rogers*, 235 Mo. App. 96, 142 S.W.2d 888, 893 (1940). Therefore, if the rule of comity applies, we must then consider whether the statutory assignment of the employee's third party action is barred in this state by virtue of public policy considerations.

■ When, as here, workers' compensation benefits are claimed in one state for an accident which occurred in another, the law generally states that the question of whether and to what extent the employer or its insurer is entitled to subrogation or reimbursement is to be determined according to the provisions of the workers' compensation law under which the compensation for the employee's injury was paid. 82 Am.Jur.2d *Workers' Compensation* § 455 (1992). That rule is also the recommendation of the Restatement. *Restatement (Second) of Conflict of Laws* § 185 (1971). The Restatement acknowledges that workers' compensation statutes differ as to what interest a person may have against a third party. The general rule is that the local law of the state under whose workers' compensation statute an employee has received an award determines what interest the payor has in any recovery for tort that the employee may obtain against a third person on account of the same injury. *Id.*

In *McLendon v. Kissick*, 363 Mo. 264, 250 S.W.2d 489 (1952), two workers were injured in Kansas and accepted benefits under the Kansas workers' compensation law. Both filed third party actions in Missouri more than eighteen months after the injuries occurred. The Missouri Supreme Court held that their actions were barred in Missouri, since the actions were filed past the one year deadline set forth in K.S.A. 44–504, stating:

> The argument is advanced that plaintiffs' contracts of employment were made in Missouri. Be that as it may, the fact remains that plaintiffs chose to collect compensation under the Kansas law. They are bound by their choice.

*Id.* 250 S.W.2d at 493.

The similar set of facts found in *Perry v. Carter*, 620 S.W.2d 50 (Mo.App.1981), is particularly persuasive. Plaintiff Perry was a passenger in an automobile driven by defendant Carter while she and Carter were returning to Georgia. Perry was employed in Georgia by Empire Gas, Inc. of Ashburn, and her injuries entitled her to benefits under the Georgia workers' compensation law. She received $20,029.73 in workers' compensation benefits from her employer's insurance carrier, American Insurance Company (American)

pursuant to Georgia law. Subsequently, she filed suit for her injuries in Butler County, Missouri, and American intervened seeking subrogation in the amount of payment made to her. On appeal, the trial court ruled that Georgia law applied and, therefore, American was not entitled to subrogation. *Id.* at 51. American claimed that the trial court erred because it did not follow the Missouri law that "one who makes payments under workmen's compensation law is subrogated to any rights which the injured employee has against the tort feasor." *Id.* The insurance company contended that Missouri law must be applied because the occurrence which gave plaintiff both her right to receive workers' compensation payments and her right to bring the third party action arose in Missouri. *Id.* The Georgia law stated that the right of subrogation by an employer or insurer paying workers' compensation existed only if expressly conferred by statute. Georgia's subrogation statute had been repealed in 1972. *Id.* at 52. The court stated the general rule that "the reimbursement rights of a workmen's compensation carrier are governed by the law of the state whose Workmen's Compensation Act was invoked by the claimant in obtaining benefits." *Id.* (citations omitted). The court followed the usual rule, reasoning that the parties were operating under Georgia law and, therefore, their respective rights should be determined by it. *Id.* The court held that the employer had no cause of action to recover the benefits paid by it to the injured employee. *Id.* at 53.

Finally, although not controlling, the United States District Court for the Western District of Missouri interpreted the Kansas statute at issue in this case, making a statutory assignment of the employee's cause of action against a third party tortfeasor, and held the principle of comity controlling in *Farnham v. Daar, Inc.,* 184 F.Supp. 809, 811 (W.D.Mo.1960). Plaintiff was a Kansas resident, employed in Kansas and injured in Missouri while making a delivery of merchandise for his employer. The employer filed the appropriate forms with the Kansas Workmen's Compensation Commission and plaintiff was awarded benefits. More than one year after the injury was sustained, the plaintiff filed a lawsuit in Missouri which was removed to the federal district court. The court interpreted the statutory assignment contained in K.S.A. 44–504 (1949) and held that the plaintiff could not maintain his lawsuit, stating:

> [T]here is nothing in the reported cases that indicates that Missouri would enforce its own law in this situation. Rather, it seems clear that Missouri is willing to accept Kansas law under the principle of comity....

*Id.* at 811. The court cited *Scott v. Missouri Pac. Ry. Co.,* 333 Mo. 374, 62 S.W.2d 834 (1933), and *Giambelluca v. Thompson,* 283 S.W.2d 531 (Mo.1955), for the principle "that Missouri will follow the law of the state where the employee has accepted compensation, even though the employee is injured in Missouri." *Farnham,* 184 F.Supp. at 811.

We hold that the principle of comity controls and, barring any violation of public policy, the trial court properly applied Kansas law. Plaintiff's first point is denied.

■■■ If the law of a foreign state violates our public policy, as a general rule, it will not be enforced by our state courts. *Yellow Mfg.,* 142 S.W.2d at 893. The plaintiff claims that a cause of action for personal injury is not assignable under Missouri law and an attempt to do so is against our public policy, citing *Chuning v. Calvert,* 452 S.W.2d 580 (Mo.App.1970), and *Travelers Indem. Co. v. Chumbley,* 394 S.W.2d 418 (Mo.App.1965). Factually those cases involved the assignment of an automobile medical payment and lost wages and medical expenses to which the payor was subrogated under contract with the injured party. Our law, like that of many other jurisdictions, prohibits the assignment of tort claims arising out of personal injuries. *Chuning,* 452 S.W.2d at 584; *Travelers Indem.,* 394 S.W.2d at 423.

In determining whether the application of K.S.A. 44–504 violates Missouri's public policy, we first note that, on occasion, Missouri courts have applied the same or similar Kansas statutes when it has been at least arguable that public policy may be implicated.

First, in *McLendon,* the Missouri Supreme Court applied a Kansas statute identical to the one at issue, and barred an action

brought in Missouri by an injured employee against a third party tortfeasor more than one year after the date of injury. *McLendon,* 250 S.W.2d at 493. Admittedly, the court did not discuss public policy in that decision.

Second, although again public policy arguments did not appear to be raised, this court enforced a Kansas statute that assigned to the insurance company the right of subrogation to an injured party's recovery to the extent of duplicative personal injury protection benefits for, among other losses, medical benefits. *Bell v. Mid–Century Ins. Co.,* 750 S.W.2d 708, 710 (Mo.App.1988). At the time of the accident in Missouri, the insured was a Kansas resident and made recovery against third party tortfeasor in Missouri which included damages for injuries covered by medical benefits under the insurance policy. This court upheld the enforceability of the statutory subrogation rights of the insurance company for medical benefits. *Id.* In this light, it appears that Missouri courts will enforce employers' and insurers' rights of assignment and subrogation which are conferred by Kansas statutes.

An examination of workers' compensation statutory schemes in general, and that of Missouri in particular, may assist in determining the public policy implications. The workers' compensation statutes of the various states differ as to the persons who may maintain a tort action against a third person following an award of compensation. Larson has identified five different types of workers' compensation statutes. *See* 2A Arthur Larson, *Workmen's Compensation Law* §§ 74.10–74.15 (1993).

Kansas has an employee priority statute which is the procedure followed in twenty-two states. The law in these states gives an employee who has received workers' compensation benefits a prescribed time in which to bring an action against a third party tortfeasor and, if the employee does not file within the prescribed time, the right to bring the action is transferred to the payor of compensation (employer or insurer). *Id.* § 74.14.

The statutes of Missouri and twelve other states, on the other hand, allow either the employer or employee to seek recovery against the third party, without giving a priority, and typically provide for joinder of one in a lawsuit initiated by the other. *Id.* § 74.13. Therefore, in the majority of the states, the workers' compensation statutes, under varying circumstances, contemplate the transfer of a personal injury cause of action from an employee who has collected workers' compensation benefits to the employer or insurance company who has paid those benefits. The statutes differ as to what point in time the appropriation of the cause of action occurs.

Next, we examine the workers' compensation statute of Missouri, and how the courts of this state would deal with a similar situation. Section 287.150, RSMo Supp.1993, states in relevant part:

> 1. Where a third person is liable to the employee ... for the injury or death, the employer shall be subrogated to the right of the employee ... against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation to such employee ... but such employer may recover any amount which such employee ... would have been entitled to recover.

The statute expressly grants an employer the authority to bring a personal injury cause of action on behalf of itself and the injured employee.

The Missouri Supreme Court, in *General Box Co. v. Missouri Util. Co.,* 331 Mo. 845, 55 S.W.2d 442 (1932), discussed the question of whether an employer's contributory or concurrent negligence was a defense to the employer's subrogated action against the third party tortfeasor for the damages paid to the heirs of the deceased employee. The court held that if the injured employee declines or neglects to sue the negligent third party tortfeasor, the subrogated employer who is liable for worker's compensation may bring the action. *Id.* 55 S.W.2d at 446. Discussing the statute which allows the employer to recover any amount which the employee would have been allowed to recover (identical to the current statute § 287.150), the court held that our statute:

does not deprive the injured employee, as a real party in interest, of the right to maintain an action against the third party, yet it does, by a process of conventional subrogation *in the nature of an assignment, plainly invest the employer* liable for compensation *with the right to bring and maintain the action* against such third party, in his own name, but for the benefit of both himself and the injured employee.

*Id.* (emphasis added).

In *State ex rel. Missouri Highway & Transp. Comm'n v. Copeland,* 820 S.W.2d 80 (Mo.App.1991), the Southern District faced the question as to whether the employer or employee had the right to carry forward with and to control the lawsuit against the third party tortfeasor. Mr. Haynes was employed by the State Highway Department and while he was operating a State Highway Department truck in the course of his employment, he was involved in an automobile accident in Missouri with a Pepsi–Cola truck. Both Mr. Haynes and the Missouri Highway Department filed separate lawsuits against the Pepsi–Cola Bottling Company and its driver, the third party tortfeasors. The employer's lawsuit was filed first. Mr. Haynes filed later, but within 95 days following the date of the injury. The Missouri Highway Department's petition included a count for the personal injuries sustained by Mr. Haynes and a count for damages to the vehicle involved in the accident. Mr. Haynes filed a motion to intervene in the Highway Department's lawsuit for the limited purpose of filing a motion to dismiss the employer's action. The motion to dismiss was sustained and that ruling was the subject of relator's writ of prohibition.

The court discussed the holding of *General Box,* and stated:

It thus appears that either the injured employee may bring his own action for damages against the negligent third party, or, if he declines or neglects to do so, then the subrogated employer liable for payment of compensation may bring such action, or both such parties may join in such suit.

*Id.* 820 S.W.2d at 83 (*quoting General Box,* 55 S.W.2d at 446). The *Copeland* court held that the employee in that case was not derelict in pursuing his right to recover by wait-ing to file 95 days after the injury occurred. *Id.* at 84. Therefore, he was entitled to manage the lawsuit and guide the efforts to effect recovery for injuries sustained, including the compensation expenditures of his employer. *Id.*

The Missouri statute differs from the Kansas statute in that the Missouri statute sets no priority on the time when each may file suit. There is no practical distinction between subrogation as used in the Missouri statute and assignment, about which the plaintiff complains, used in the Kansas statute. Both *General Box* and *Copeland* acknowledge this proposition by deciding that the party who has the cause of action has control of it and holds the proceeds in trust for the other. *General Box,* 55 S.W.2d at 446; *Copeland,* 820 S.W.2d at 82.

The provisions in both the Kansas and Missouri statutes have the same practical effect: the cause of action is under the direction and control of the party who has appropriated the action. It cannot be said that the Kansas statute which statutorily assigns the cause after one year violates the public policy of this state. Our statute reaches the same result, but without identifying the point in time at which the transfer occurs as the Kansas statute does. Our case law has described the Missouri statute as an assignment with the excess recovery being held in trust for the other party. In Missouri, the employer may sue the third party liable for injuries in entirety, not merely pro tanto. *McKenzie v. Missouri Stables, Inc.,* 225 Mo.App. 64, 34 S.W.2d 136, 138–39 (1930). While Missouri's statute uses the term subrogation, "the Legislature used the term in the conventional sense, as synonymous with assignment." *Id.* 34 S.W.2d at 141. Therefore, in this situation, the transfer of a personal injury cause of action does not violate the public policy of Missouri, which has been described as seeking to avoid the bartering of personal injury claims.

Judgment affirmed.

All concur.