**David L. MILLER, Plaintiff,**

**v.**

**Gary L. DORR, et al., Defendant.**

**Gary L. Dorr, Plaintiff,**

**v.**

**David Lee Miller, et al., Defendants.**

**Nos. 02–4050–JAR, 02–4069–JAR.**

United States District Court,
D. Kansas.

May 14, 2003.

John R. Hamilton, David E. Watson, Hamilton Laughlin Barker Johnson & Watson, Topeka, KS, Hal D. Meltzer, Shawn M. Rogers, Baker, Sterchi, Cowden & Rice, L.L.C., Overland Park, KS, for David L. Miller.

Mark A. Buck, Nathan Burghart, Fairchild & Buck, P.A., Topeka, KS, Hal D. Meltzer, Shawn M. Rogers, Baker, Sterchi, Cowden & Rice, L.L.C., Overland Park, KS, for Jevic Transportation.

Pamela W. Brown, Frischer & Associates, Chartered, Overland Park, KS, Michael B. Lowe, Christopher J. Sherman, Payne & Jones, Chtd., Overland Park, KS, Bradley S. Russell, Sanders Conkright & Warren, LLP, Overland Park, KS, for Eugene Prockish, Gary L. Dorr.

## MEMORANDUM ORDER AND OPINION REGARDING SETTLEMENT APPORTIONMENT

ROBINSON, District Judge.

This matter comes before the Court on plaintiff David L. Miller's Notice of Settlement and Request for Apportionment Hearing (Doc. 69). An evidentiary hearing was held March 11, 2003, at which time the Court took the matter under advisement. Defendant Jevic Transportation filed a Supplemental Brief (Doc. 75), which plaintiff has moved to strike (Doc. 76). After considering the evidence and reviewing the parties' supporting documentation, the Court is ready to rule.

### Background

These consolidated cases arise out of a motor vehicle accident that occurred on April 4, 2000, in Wabaunsee County, Kansas. At the time of the accident, plaintiff David Miller ("Miller") was a resident of North Carolina and was employed by Jevic Transportation ("Jevic"), a foreign corporation with its principal place of business in New Jersey. Dorr was employed by Eugene Prockish Trucking ("Prockish"), both residents of Kansas.

On April 1, 2002, David Miller brought claims of personal injury and loss of services against Gary Dorr and his employer, Eugene Prockish Trucking ("Prockish"). Gary Dorr filed a separate and distinct state claim against Miller and Jevic Transportation, alleging personal injury from the same accident. The state claim was removed to federal court and consolidated with Miller's action. Neither party brought property damage claims as the insurers for the vehicles have conducted binding arbitration in which Miller was found to be 60% at fault for the accident.

Following expert witness disclosures and discovery, Miller negotiated a settlement with Dorr and Prockish for his personal injury and his loss of services claim brought on behalf of his spouse, Vicky Miller. Prior to accepting the settlement, Miller gave Jevic, who holds a workers compensation subrogation lien, the opportunity to make a substitute payment for the settlement amount and proceed on the claim. Jevic declined. Pursuant to North Carolina workers compensation law, Miller asked this Court to allocate that portion of the settlement to which the subrogation lien attaches between himself and Jevic. Miller provided notice of the hearing to both Jevic and the insurer/risk management provider. Jevic objects to the proposed settlement.

### Findings of Fact

Three witnesses testified on plaintiff's behalf at the evidentiary hearing. David Miller testified regarding the extent of his injuries and liability.[1] He is 50 years old, and has been married to Vicky Miller since 1995. He completed the tenth grade and worked as a truck driver from 1978 until he became disabled and unable to perform the duties of that job.

On April 4, 2000, Miller was making a delivery in Wabaunsee County, Kansas, in the course of his employment driving a 2000 freightliner tractor trailer owned by Jevic. While attempting to pull into a residential driveway, Miller pulled his tractor trailer onto the highway, blocking both lanes of travel. Dorr crested a hill 800 to 1,000 feet north of Miller's location while driving a 1983 Mack trailer owned by Prockish. Dorr crashed into the side of Miller's vehicle. Miller testified that it was his decision to pull onto the highway while attempting to back into the driveway; that he was aware the speed limit

was 55 mph; and that there was a hill to the north of him that limited drivers' visibility. He testified that he thought another vehicle cresting the hill would be able to stop. Although Miller's tractor trailer was extended over both lanes of traffic, he did not take any steps to warn oncoming motorists, such as cones or flares. Miller was ticketed for making an illegal backing maneuver.

Miller was taken to the Wamego hospital and diagnosed with abrasions of the face, abdomen and knees. X-rays taken of his cervical spine, chest, ribs and knees were negative. Drug tests were also negative. Miller's treating physician noted the first reference to complaints of back pain on May 26, 2000.

After returning to duty in June 2000, Miller was unloading freight and felt a sharp pain in his back, causing him to drop plywood on his toe, which caused a fracture. Miller was authorized to seek treatment and engaged in physical therapy for his back injury through November 2000. Miller continued to suffer from back pain and underwent surgery in December 2002.

Jevic is a qualified self-insurer and its workers compensation claims are administered by a third party administrator, RSKCo Claims Services ("RSKCo"). Miller filed a workers compensation claim in North Carolina. All of Miller's medical treatment to date has been authorized and directed by the North Carolina Industrial Commission. RSKCo paid $8,735.90 in recoverable medical expenses prior to the surgery. Estimated medical expenses for the surgery and follow-up care is $30,000. Miller has received approximately $22,700 in temporary total disability payments from RSKCo and is currently receiving

---

1. Miller's deposition testimony taken August 15, 2002, plaintiff's exhibit 18, was submitted subsequent to the hearing.

temporary total disability payments of $588 per week.

Miller was examined by a board-certified orthopedic surgeon, who reviewed all medical records prior to surgery, and concluded that his back injuries are compatible and probably the result of the vehicular accident. In addition, Miller designated an accident reconstruction expert who concluded there was sufficient distance for Dorr to observe, react and safely brake without colliding with the tractor trailer driven by Miller. The expert also opined that Dorr was traveling at an excess rate of speed. Dorr and Prockish designated their own accident reconstruction expert to provide rebuttal testimony to the conclusion as to site distance, braking distance and speed of the Dorr and Prockish vehicle. The expert testimony of Dorr and Prockish's expert is subject to a pending *Daubert* objection filed by Miller (Doc. 77).

After exchanging expert reports, a tentative settlement was reached with Dorr and Prockish's insurance carrier. In exchange for a full release, Dorr and Prockish have agreed to pay $30,000 for Vicky Miller's loss of services claim and $6,000 for Miller's personal injury claim. The second case filed by Dorr and Prockish against Miller and Jevic, 02–4069–JAR, remains pending, and trial is set before this Court on July 14, 2003.

Miller testified that since the accident, he can no longer help Vicky Miller maintain their home and extensive landscaping, and that there is no intimacy in their relationship. Miller testified regarding the terms of the settlement agreement, asking the Court to award him the $6,000 free of Jevic's subrogation lien because if Jevic had provided him with a "good doctor" to begin with, he "wouldn't be like this."

Ron Pope, an attorney with experience in vehicular personal injury litigation, tes-

tified that in his opinion, Miller had only a ten percent chance of prevailing in the litigation, compounded by issues of Miller's contributory negligence. Pope noted that there was a question of whether Miller's back injury was initially caused by the accident, but aggravated by several re-injuries that are not accident related. Pope testified that $36,000 is an "extremely fair" settlement and specifically, that a $30,000 settlement amount for Vicky's loss of services claim was fair because she is "now married to a very different man."

Vicky Miller testified that David is depressed since his accident and can no longer help her with household tasks, specifically lawncare and landscaping chores. She further testified that their intimate relations have been affected by the accident.

Jevic attempted to present testimony of its counsel, Hal Meltzer, who also represents Miller in the related case brought by Dorr. The Court sustained Miller's objection to Meltzer's testimony regarding the facts and his opinion regarding the value of the case. The reason for sustaining the objection was that Meltzer had not been identified or designated as an expert witness prior to the hearing and thus Miller would be prejudiced by allowing Meltzer's testimony. The Court also had serious concerns about the propriety of Meltzer testifying, particularly in the context of settlement negotiations.

A proffer of Meltzer's testimony was admitted. Meltzer would testify that he is a qualified, experienced trial attorney who has been defending and prosecuting numerous claims involving tractor trailer collisions. He is familiar with the law surrounding tractor trailers and is familiar with the valuation of cases involving personal injury arising out of collisions with tractor trailers. He would testify that he was hired to defend the claim that has

been brought against Miller and Jevic by Dorr; that he has been actively involved in defending the case; and that he has participated in the pretrial process and has reviewed all the discovery and depositions submitted. It is his custom and practice to evaluate the strengths and weaknesses of each party's claim and that there were inconsistencies and weaknesses in the testimony of Dorr's expert witness as well as information uncovered regarding Dorr's psychiatric and criminal records that might be relevant to Dorr's credibility. Meltzer would testify that there was a mediation conducted in this case, that he was present on behalf of Miller and Jevic, and there was little reference to any loss of services claim alleged by Vicky Miller. Finally, Meltzer would testify that it was his opinion that the value of Miller's claim is much greater than $36,000 and certainly much greater than the $6,000 that Miller will receive as part of the settlement agreement.

### Choice of Law

While similar, there are differences between Kansas law and North Carolina workers compensation law. Notably, while both states provide for subrogation liens in favor of employers, under the North Carolina act, a court has discretionary authority to reduce or eliminate an employer's lien on the proceeds of an employee's settlement with a third party.[2] Thus, a choice of law analysis is necessary and the preliminary issue before the Court is whether Kansas or North Carolina law governs Jevic's subrogation rights.

■ A federal court sitting in diversity must apply the choice of law rules of the forum in which it sits.[3] If the state's highest court has not addressed the issue presented, the federal court must determine what decision the state court would make if faced with the same facts and issue.[4] The federal court should consider state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority.[5] Several Kansas cases have concluded that "'the law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred.'"[6] Generally, the party seeking to apply the law of a jurisdiction other than the forum has the burden to present sufficient facts to show that other law should apply.[7]

■ Neither the courts nor the legislature in Kansas have addressed the choice of law question when resolving a dispute over subrogation rights arising out of workers compensation benefits paid to the employee. On this question, a number of states apply the workers compensation law of the state under which the workers compensation benefits were paid.[8] However,

---

2. N.C.G.S. § 97–10.2(j).

3. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Stuart v. Colorado Interstate Gas Co.,* 271 F.3d 1221, 1225 (10th Cir.2001).

4. *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir.1988) (citations omitted).

5. *Id.*

6. *Systems Design and Management Information, Inc. v. Kansas City Post Office Employees Credit Union,* 14 Kan.App.2d 266, 269, 788

P.2d 878 (1990) (quoting *Shutts v. Phillips Petroleum Co.,* 235 Kan. 195, 221, 679 P.2d 1159 (1984), *rev'd in part on other grounds,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)).

7. *Layne Christensen Co. v. Zurich Canada,* 30 Kan.App.2d 128, 138, 38 P.3d 757, 767 (2002).

8. *See, e.g., Brown v. Globe Union, a Div. of Johnson Controls, Inc.,* 694 F.Supp. 795 (D.Colo.1988) (applying Colorado choice of law rule); *Langston v. Hayden,* 886 S.W.2d 82 (Mo.App.1994).

in other states which generally follow the rules of *lex loci delicti,* the applicable law is that of the state where the injury occurred.[9] Plaintiff contends that North Carolina law applies and Jevic insists that Kansas law controls, although neither cites any relevant authority in support of their respective positions.

The first step in determining whose law is to govern a conflict situation is the characterization of what kind of case is involved. It is important to note that this is not a suit for workers compensation. An action against a third-party tortfeasor is a tort action for damages. Kansas courts have characterized subrogation as "a creature of equity invented to prevent a failure of justice and is broad enough to include every instance in which one party is required to pay a debt for which another is primarily answerable." [10] "More specifically, subrogation exists to prevent double recovery." [11] Under Kansas law, one who asserts the right of subrogation "must step into the shoes of, or be substituted for, one whose claim or debt he or she paid and can only enforce those rights the latter could enforce." [12] In this case, Jevic's shoes are standing in a tort case, and the rights of the subrogee should be determined according to tort law.

The Court turns then to Kansas's conflict of law rules that govern choice of law in tort cases. "When addressing choice-of-law issues, the Kansas [appellate] courts follow the Restatement (First) of Conflict of Laws." [13] Kansas follows the rule that the law of the state where the tort occurred, *lex loci delicti,* should apply, under traditional choice of law principles largely reflected in the original Restatement of Conflict of Laws (1934).[14] This rule is well established under Kansas law and there is no indication that Kansas intends to abandon the rule. For example, the Supreme Court rejected the analytical approach which allows the forum court to apply the law of the jurisdiction most intimately concerned with the outcome of the particular litigation.[15]

Although this matter is essentially one sounding in tort, the fact that workers compensation acts of two different states are implicated must be considered. Section 185 of the Restatement of the Law Second (1971) directly addresses the issue before the court. That section provides:

> The local law of the state under whose workmen's compensation statute an employee has received an award for an injury determines what interest the person who paid the award has in any recovery for tort or wrongful death that the employee may obtain against a third person on account of the same injury.

Comment (a) to § 185 explains that section's rationale:

> Under the rule of this Section, the local law of the state under whose workmen's compensation statute the claimant has received an award for an injury determines what interest the person who paid the award has in the recovery of any

---

**9.** *See, e.g., O'Neal v. Kennamer,* 958 F.2d 1044 (11th Cir.1992) (applying Alabama law); *Maryland Cas. Ins. Co. v. Glomski,* 210 Ga.App. 759, 437 S.E.2d 616 (1993) (applying Georgia law).

**10.** *Western Sur. Co. v. Loy,* 3 Kan.App.2d 310, 312, 594 P.2d 257 (1979).

**11.** *Deffenbaugh Industries, Inc. v. Wilcox,* 28 Kan.App.2d 19, 24, 11 P.3d 98 (2000).

**12.** *Id.* (citing *Corley v. Wichita Elec. Co., Inc.,* 163 F.R.D. 12, 13 (D.Kan.1995)).

**13.** *Brenner v. Oppenheimer & Co., Inc.,* 44 P.3d 364, 376 (2002).

**14.** *Raskin v. Allison,* 57 P.3d 30, 32 (2002).

**15.** *Ling v. Jan's Liquors,* 237 Kan. 629, 634, 703 P.2d 731 (1985).

cause of action for tort or wrongful death that the employee may have against a third person on account of the same injury.

It is this Court's opinion that Kansas would adopt the reasoning of § 185 of the Restatement of Conflicts Second. Without disturbing the continued vitality of the *lex loci* approach in tort cases generally, it is not unreasonable to conclude that Kansas courts could apply a different analysis in the area of workers compensation subrogation. Subrogation rights in the workers compensation situation arise exclusively under the applicable workers compensation act. Because the employer's right to subrogation, if any, is created by statute, the state statute creating the rights should be applied to determine the rights and liabilities thereunder. Application of the statute assures uniform and predictable results and does not allow one party to take advantage of the portion he likes and disregard the portions of which he disapproves. Accordingly, exclusive application of that state's workers compensation statute preserves the legislative give and take considered in fashioning the worker's remedy. Otherwise, piecemeal application of different states' workers compensation statutes creates a risk of an outcome not contemplated by either legislature in drafting the respective statutes.

Having determined that § 185 of the Restatement of Conflicts Second is appropriate for determining the choice-of-law issue, the Court concludes that North Carolina workers compensation subrogation law applies, rather than Kansas.

### Reasonableness of the settlement

█ Jevic has requested the Court grant a hearing on the reasonableness of the proposed settlement, citing the Kansas district court case of *TBG Inc. v. Bendis*.[16] In that case, the court held that ordinarily, settlement agreements need not be approved by the court; however, where a settlement agreement requires a bar order which affects the right of parties to the litigation who are not also parties to the settlement, the court must determine whether the settlement agreement is fair to those affected nonsettling parties.[17] There is no such bar order in the settlement agreement between Miller and the third-party tortfeasor, justifying an exception to the general rule, and the Court need not approve the settlement agreement on this basis.

Moreover, it appears that under North Carolina workers compensation subrogation law, Jevic has no right to object to the settlement. Under N.C. Gen.Stat. § 97.10.2(b), an employee has the exclusive right to proceed to enforce the liability of the third party tortfeasor within 12 months of injury or death. Section 97.10.2(c) goes on to state that if settlement is not made within said 12–month period:

> [E]ither the employee or the employer shall have the right to proceed to enforce the liability of the third party by appropriate proceedings; either shall have the right to settle with the third party and to give a valid and complete release of all claims to the third party by reason of such injury or death, subject to the provisions of [section] (h) below. *Provided that 60 days before the expiration of the period fixed by the applicable statute of limitations if neither the employee nor the employer shall have settled with or instituted proceedings against the third party, all such rights shall revert to the employee or his personal representative.*[18]

---

**16.** 811 F.Supp. 596 (1992).

**17.** *Id.* at 600.

**18.** N.C.G.S. § 10.2(c) (emphasis added).

Miller submits that because he brought this action against the third party only one day before the statute of limitations ran, all rights to settle reverted to him and his employer Jevic has no right to object to the settlement.

The statute further provides in § 97–10.2(h) that neither the employee nor employer shall make any settlement with the third party without the written consent of the other, unless either party follows the provisions of subsection (j) of this section, which Miller has done by virtue of his request for the court to determine and apportion Jevic's lien. Prior to 1991, § 97–10.2(h) provided that a settlement agreement reached without the consent of the employer was void.[19] Thus, a subrogation lienholder was endowed with the right not to have its lien abridged without its consent.[20] The amended version of that subsection, effective October 1, 1991, affected that right by allowing a party to apply to the court to have it determine the amount of the lien, regardless of whether the lienholder had consented.[21]

In light of the above, the Court concludes that it need not approve the settlement agreement, at least with respect to overall reasonableness. Accordingly, Jevic's request for a hearing on this matter is denied.

*Determination of subrogation lien amount*

■ Having determined that North Carolina is the applicable choice of law, the Court turns to the question of apportionment of the settlement proceeds. This question involves determination of two issues: 1) the extent of Jevic's subrogation rights, that is, does its lien extend to Vicky Miller's recovery for loss of services and 2) the amount, if any, of Jevic's lien. Jevic's right to assert a subrogation lien originates in N.C. Gen.Stat. § 97–10.2. Determination of whether Jevic may pursue recovery on a subrogation lien theory turns on the language of the statute itself, and the Court will examine several of the key provisions in turn.

Generally speaking, an employer must pay workers compensation benefits to an employee if that employee suffers a compensable work injury and notifies the employer of his workers compensation claim.[22] If the employee is injured by a third party, the non-negligent employer must still pay workers compensation benefits, but can claim a subrogation lien on any proceeds the employee wins in a subsequent lawsuit against the third party, either by judgment or by settlement.[23] The employer's right to a lien on a recovery from the third-party tortfeasor is "mandatory in nature." [24]

N.C.Gen.Stat. § 97–10.2(h) describes the nature of a party's lien in the context of a workers' compensation case, stating in pertinent part:

In any proceeding against or settlement with the third party, every party to the claim for compensation *shall have a lien to the extent of his interest* under (f) hereof upon any payment made by the third party by reason of such injury or death, whether paid in settlement, in satisfaction of judgment, as consideration for covenant not to sue, or otherwise and *such lien may be enforced against any person receiving such*

---

**19.** *Pollard v. Smith*, 324 N.C. 424, 426, 378 S.E.2d 771, 773 (1989).

**20.** *Id.*

**21.** *See Manning v. Fletcher*, 102 N.C.App. 392, 401, 402 S.E.2d 648 (1991).

**22.** N.C.G.S. § 97–22 (1999).

**23.** N.C.G.S. § 97–10.2(f)(1).

**24.** *Radzisz v. Harley Davidson of Metrolina, Inc.*, 346 N.C. 84, 89, 484 S.E.2d 566, 569 (1997).

*funds.* Neither the employee or his personal representative nor the employer shall make any settlement with or accept any payment from the third party *without the written consent of the other and no release to or agreement with the third party shall be valid or enforceable for any purpose unless both employer and employee or his personal representative join therein;* provided, that this sentence shall not apply: ...

(2) If either party follows the provisions of subsection (j) of this section.[25]

Section 97–10.2(f)(1) establishes the priority of disbursements of any settlement with or judgment against a third party. First priority is given to costs, second to attorney fees, and third, "... to the reimbursement of the employer for all benefits by way of compensation or medical compensation expense paid or to be paid by the employer ...."

Once a party shows that it is entitled to a lien, that amount must still be calculated. N.C. Gen Stat. § 97.10.2(j) explains that "in the event that a settlement has been agreed upon by the employee and the third party, either party may apply to [the court] to determine the subrogation amount." The statute goes on to state:

After notice to the employer and the insurance carrier, after an opportunity to be heard by all interested parties, *and with or without the consent of the employer,* the judge shall determine, in his discretion, the amount, if any, of the employer's lien, whether based on accrued or prospective workers' compensation benefits, and the amount of cost of

the third-party litigation to be shared between the employee and employer.[26]

Miller contends that Vicky Miller's $30,000 loss of services settlement award is not subject to the subrogation lien because it is for damages not recoverable under the North Carolina workers compensation act. Jevic contends that its subrogation lien extends to the full settlement amount. The parties have not cited nor have we found any North Carolina cases which address the question of whether an employer's subrogation lien extends to proceeds from a spouse's claim for loss of services.

North Carolina courts have stated that "statutory interpretation properly commences with an examination of the plain words of a statute."[27] "An analysis utilizing the plain language of the statute and the canons of construction must be done in a manner which harmonizes with the underlying reason and purpose of the statute."[28] Thus, "[w]hen language used in [a] statute is clear and unambiguous, [the Court] must refrain from judicial construction and accord with words undefined in the statute and their plain and definite meaning."[29]

The North Carolina Supreme Court has noted that § 97–10.2 and its statutory predecessors were designed to secure prompt, reasonable compensation for an employee and simultaneously to permit an employer who has settled with the employee to recover such amount from a third party tortfeasor.[30] Absent extenuating circumstances, the Act in general and § 97–10.2 specifically were never intended to provide

---

**25.** *Id.* (emphasis added).

**26.** N.C.G.S. § 10.2(j) (emphasis added).

**27.** *Id.*

**28.** *Electric Supply Co. of Durham, Inc. v. Swain Elec. Co., Inc.,* 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991).

**29.** *Hieb v. Lowery,* 344 N.C. 403, 409, 474 S.E.2d 323, 327 (1996) (quotation omitted).

**30.** *Radzisz,* 346 N.C. at 89, 484 S.E.2d at 569 (citations omitted).

the employee with a windfall of a recovery from both the employer and the third-party tortfeasor.[31] Thus, the intent of the legislature in enacting § 97–10.2 is to reimburse employers for monies they pay to employees who are injured by any negligent third party and to prevent double recovery by the employee.[32]

After careful examination of the statute, the Court agrees with Miller that the language of § 97–10.2 is clear and unambiguous and does not contemplate an extension of a subrogation lien to an award for loss of services. Loss of services to a spouse is not an item of compensation considered in making a workers' compensation award. Workers' compensation laws are designed to compensate workers for their injuries. If the alleged element of damages is loss of services, the injured party is not the worker, but his or her spouse.[33] In this case, Miller brought an action against Dorr for loss of services on behalf of Vicky Miller, seeking damages not recoverable under the workers compensation act. Because Jevic has paid nothing to Miller for loss of services, any recovery as a result of a loss of services action against a negligent third party is not subject to subrogation. Under these circumstances, there is no double recovery.

This raises the issue of the nature and extent of this Court's review of the parties' apportionment of the settlement amount attributed to Vicky Miller's loss of services claim rather than Miller's personal injury damages. Again, the parties do not provide and the Court was unable to find North Carolina case law on this issue, leading the Court to conclude that North Carolina does not empower courts with specific authority to review the parties'

agreed upon settlement structure between damages for loss of services and personal injury. Absent authority stating otherwise, it does not appear that North Carolina law prohibits a plaintiff from crafting a settlement in this manner. Moreover, it appears the North Carolina legislature provided a means to prevent circumvention of the operation of § 97–10.2 by mandating notice and providing for court supervision.

Even if the Court did have authority to determine the claim amount for loss of services, it would not disturb the parties' apportionment. Other states confronted with the issue, including, ironically, Kansas, have adopted the approach that the settlement documents should clearly state that a certain amount was specifically for noncompensable losses and such amount is supportable in fact as opposed to an effort to circumvent the operation of the statute.[34] In this case, Vicky Miller's settlement amount was equal to her claim for past loss of services, or $30,000; her claim for future loss of services was $60,000. While the evidence of loss of services is rather slim, Jevic did not introduce any admissible evidence showing that Vicky Miller did not suffer a loss in the amount claimed and agreed to or that the parties acted in bad faith in an effort to circumvent the employer's right of subrogation. Meltzer's proffered testimony was merely that the loss of services claim was not mentioned in mediation; not that it had no merit. Although Miller's settlement amount of $6,000 is substantially less than his claim for personal injury damages, there was evidence that Miller's back injury, while probably caused by the accident, was aggravated by several re-injuries that were not accident related.

---

**31.** *Id.* (citation omitted).

**32.** *Johnson v. Southern Indus. Constructors, Inc.,* 347 N.C. 530, 495 S.E.2d 356 (1998).

**33.** K.S.A. 23–205.

**34.** *McGranahan v. McGough,* 249 Kan. 328, 338, 820 P.2d 403 (1991); *Pendleton v. W.C.A.B. (Congoleum Corp.),* 155 Pa.Cmwlth. 440, 625 A.2d 187 (Pa.Cmwlth.1993).

Because Vicky Miller's $30,000 loss of services claim is not subject to the subrogation lien, Miller has asked the Court to determine the amount, if any, of Jevic's lien in his personal injury settlement. Miller asks the Court to eliminate Jevic's lien and allocate the entire $6,000 of his settlement proceeds to him because the settlement, together with his workers' compensation recovery, will not come close to adequately compensating him for his injuries. Jevic argues that it is entitled to all or substantially all of the settlement proceeds.

■ Subsection (j) lists several factors that the court shall consider in determining the amount of the employer's lien, specifically: 1) the anticipated amount of prospective compensation the employer or workers compensation carrier is likely to pay to the employee in the future; 2) the net recovery to the plaintiff; 3) the likelihood of the plaintiff prevailing at trial or on appeal; 4) the need for finality in the litigation; and 5) any other factors which the court deems just and reasonable.[35] The court is to make a "reasoned choice, a judicial value judgment, which is factually supported, and must enter an order with findings of fact and conclusions of law sufficient to provide for meaningful appellate review".[36]

In applying the above factors, the Court finds as follows:

1. The anticipated amount of prospective compensation Jevic is likely to pay to Miller in the future is substantial. Jevic continues to pay temporary total disability benefits of $558 per week. Miller recently underwent a second surgery and post-surgical physical therapy will follow, with estimated expenses of $30,000. It is anticipated that Miller will receive an additional 4 to 5 months or temporary total disability benefits, followed by recovery for any permanent impairment.

2. The likelihood of Miller prevailing at trial is hotly disputed. Miller's expert Ron Pope testified that he believed Miller's chances of prevailing were slight and that Miller's contributory negligence, set at 60% by an arbitrator, was problematic. Jevic has presented conflicting evidence via Meltzer's proffer, that Miller's case is worth much more than the $36,000 settlement amount.

3. The proposed settlement only resolves Miller's claim against Prockish and Dorr, who remains free to proceed in his claim against Jevic.

4. Although otherwise permissible, the Court will factor in that Miller crafted the settlement to ensure maximum recovery for Vicky Miller.

Based on these factors, the Court finds that it is fair, equitable and just in this case that the subrogation lien in favor of Jevic should be allowed in its entirety and Jevic be allocated the amount of $6,000. While it does not appear that the settlement amount and workers compensation benefits will fully compensate Miller for his injury, the circumstances and equities of this case do not justify eliminating Jevic's lien.[37]

**35.** *Id.*

**36.** *Levasseur v. Lowery*, 139 N.C.App. 235, 243, 533 S.E.2d 511 (2000) (citing *Allen v. Rupard*, 100 N.C.App. 490, 397 S.E.2d 330, 333 (1990) (citations omitted)).

**37.** *Cf., e.g., In re Biddix*, 138 N.C.App. 500, 530 S.E.2d 70 (2000) (trial court did not abuse its discretion by ordering that employer had no lien upon the proceeds of the employee's settlement with a third-party tortfeasor where the court made findings with respect to the extent of the employee's injuries, her ongoing pain and suffering, her medical expenses paid by her employer, her compensation for temporary disability, the amount of the settlement, and the fact that the third-party tortfeasor had no additional assets from which she could recover); *Wiggins v. Bush-*

### Costs and attorney fees

Finally, the parties raise the issue of costs and fees. Miller asks that costs and fees be subtracted from the $6,000, or any amount allocated to Jevic. Jevic contends that fees are inappropriate under the circumstances, since it had to hire its own counsel and because Miller's counsel promised Jevic it would protect its lien, then crafted the settlement to avoid Jevic's subrogation interest.

N.C.Gen.Stat. § 97–102.2(f)(1)(b) directs the order and priority of disbursements of amounts recovered, including costs and attorney fees. This statute provides a general rule that "the payment of the fee of the attorney representing the person making the settlement or obtaining judgment" ... shall not be subject to the provisions of § 90 of this Chapter [G.S. § 97–90] but shall not exceed one third of the amount obtained or recovered of the third party.[38] Thus, the fee the attorney charges the employee is not subject to the reasonableness requirement of § 97–90(c); the only restriction is that it may not exceed one third of the amount recovered.[39] By contrast, the fee attributable to subrogation interests of the employer or its carrier is excluded from that provision exempting attorney fees from the reasonable requirement.[40] This statute applies to the Industrial Commission's authority to disburse monies; once a settlement is reached between the employee and the third party, the court has jurisdiction over disbursement and does not appear to be bound by this subsection.[41]

Section 97–10.2(f)(2) directs that attorney fees paid under subsection (f)(1) "shall be paid by the employee and employer in direct proportion to the amount each shall receive under (f)(1)c and (f)(1)d hereof and shall be deducted from such payments when distribution is made."

The parties have not provided the Court with any documentation as to amount or propriety of attorney fees. The Court directs the parties to submit such documentation within ten (10) days of this order, along with additional briefing on how those fees should be proportioned between the parties under North Carolina workers compensation subrogation law, specifically, § 97–10.2(f). The parties shall file simultaneous briefs, limited to five (5) pages, on or before *May 27, 2003;* there will be no response briefs.

**IT IS THEREFORE ORDERED BY THE COURT** that Jevic's request for hearing on the reasonableness of the settlement agreement is DENIED.

**IT IS FURTHER ORDERED** that the subrogation lien in favor of Jevic is allowed in the amount of $6,000, subject to this Court's determination of attorney fees upon submission of documentation and briefing as directed above.

**IT IS FURTHER ORDERED** that Miller's Motion to Strike Jevic's Supplemental Brief (Doc. 76) is DENIED.

IT IS SO ORDERED.

*ranger Fence Co.,* 126 N.C.App. 74, 483 S.E.2d 450 (1997) (trial court did not abuse its discretion by eliminating the subrogation lien on the proceeds of a tort settlement paid to a fatally injured employee's family).

**38.** *Hardy v. Brantley Const. Co.,* 87 N.C.App. 562, 567, 361 S.E.2d 748 (1987), *rev'd in part,*

*appeal dismissed in part* 322 N.C. 106, 366 S.E.2d 485 (1988).

**39.** *Id.*

**40.** *Id.*

**41.** *Levasseur v. Lowery,* 139 N.C.App. at 243–244, 533 S.E.2d 511.