BILLY DEAN BUCKNER, EMPLOYEE, PLAINTIFF/APPELLEE v. CITY OF ASHEVILLE, EMPLOYER, DEFENDANT/APPELLANT

BILLY DEAN BUCKNER, PLAINTIFF v. WAYNE FORTUNE HENSLEY AND DOES A THROUGH D AND CORPORATIONS ONE THROUGH FIVE, DEFENDANTS

CITY OF ASHEVILLE, A MUNICIPAL CORPORATION, PLAINTIFF v. WAYNE FORTUNE HENSLEY, DEFENDANT

No. 9210IC1167

(Filed 18 January 1994)

1. **Master and Servant § 89.4 (NCI3d) — employer-employee settlement with tortfeasor — distribution of proceeds — jurisdiction in Industrial Commission — no jurisdiction of trial court**

Pursuant to N.C.G.S. § 97-10.2, the trial court did not have jurisdiction to distribute the proceeds of an employer-

employee settlement with a tortfeasor where the record did not reveal that, at the time the parties settled their claim with the tortfeasor, the case was pending on a trial calendar and a pretrial conference had been had, but the record did reveal that the settlement was sufficient to fully compensate the employer for monies paid to the employee pursuant to the Workers' Compensation Act.

**Am Jur 2d, Workers' Compensation §§ 453, 454.**

2. **Master and Servant § 89.4 (NCI3d) — employer-employee settlement with tortfeasor — distribution of proceeds — governing statute**

    In distributing proceeds of an employer-employee settlement with a tortfeasor, the Industrial Commission was governed by N.C.G.S. § 97-10.2(f) and not (j), since the Commission did not "stand in the shoes of" the trial judge and have authority to make a distribution pursuant to subsection (j); the authority to distribute pursuant to that subsection is reserved for the trial court alone, and even if the trial court here had jurisdiction, it could not confer the authority of subsection (j) on the Commission; and the Commission's authority to allocate third party proceeds was limited to that stated in subsection (f), and estoppel was not given as a factor to be considered.

    **Am Jur 2d, Workers' Compensation §§ 453, 454.**

3. **Insurance § 530 (NCI4th) — workers' compensation benefits paid — payment from employer's underinsured motorist carrier — employer's right to funds**

    An employer who has paid workers' compensation benefits to its employee is entitled to a lien on the employer's underinsured motorist benefits received by the employee in an action by the employee against the tortfeasor.

    **Am Jur 2d, Automobile Insurance § 322.**

4. **Master and Servant § 94.1 (NCI3d) — workers' compensation — employee's rehabilitation costs — employer's right to subrogation — insufficient findings**

    The Industrial Commission erred in concluding that an employer was not entitled to monies paid for the employee's rehabilitation on the ground that there was no evidence that the particular services in question constituted medical treat-

ment or supplies as defined by N.C.G.S. § 97-25, since the Commission did not make the necessary findings to support its conclusion.

**Am Jur 2d, Workers' Compensation §§ 453, 454.**

Appeal by employer-defendant City of Asheville from Order for the Full Commission filed 4 August 1992. Heard in the Court of Appeals 19 October 1993.

*James H. Toms & Associates, P.A., by James H. Toms and Christopher A. Bomba, for plaintiff/employee-appellee.*

*Nesbitt & Slawter, by William F. Slawter, and Assistant City Attorney Sarah Patterson Brison, for defendant/employer-appellant.*

GREENE, Judge.

City of Asheville (the employer) timely appeals from an order of the Industrial Commission (the Commission) directing that $170,000 received from a settlement with Wayne Fortune Hensley (the tortfeasor) be distributed to Billy Dean Buckner (the employee).

The material facts underlying this appeal are that the employee, while working within the course and scope of his employment as a plumbing inspector for the employer, was injured in an automobile collision with the tortfeasor. The employee sustained substantial injuries as a consequence of the collision. On 24 April 1989, the employee and the employer executed an "Agreement of Final Compromise Settlement and Release" wherein the parties agreed that the employer would pay to the employee the lump sum of $44,000 in addition to $39,823.17 in medical bills previously paid by the employer on behalf of the employee and in addition to $29,358 in temporary total disability previously paid by the employer to the employee. The Commission approved the settlement in an order filed 28 June 1989.

On 11 August 1989, the employer filed a civil action against the tortfeasor and on 11 September 1989 the employee filed a civil action against the tortfeasor. These actions were consolidated on 29 November 1989. On 15 February 1990, the tortfeasor's liability insurance carrier, pursuant to N.C. Gen. Stat. § 20-279.21, paid into the Clerk of Superior Court its policy limit of $100,000. On 11 June 1990, both plaintiffs and the tortfeasor executed a consent

**BUCKNER v. CITY OF ASHEVILLE**

[113 N.C. App. 354 (1994)]

judgment, compromising all claims for the total sum of $170,000. The employer's underinsured motorist insurance carrier subsequently paid the sum of $70,000 into the Clerk of Superior Court. In the consent decree it was ordered that the "settlement funds be held by the Clerk pending further Order of this Court or receipt of an Order of Distribution from the North Carolina Industrial Commission." On 13 June 1990, the trial court conducted a hearing regarding the distribution of the $170,000 and entered an order which "referred [the matter] to the NC Industrial Commission for such action as they deem appropriate under the facts as they find them to be."

Subsequently, the Commission ordered that the employer "recover none of the . . . funds on deposit with the Buncombe County Clerk of Superior Court." In support of the order barring the employer from recovery, the Commission entered two separate conclusions of law: (1) that "the employer is estopped from asserting a claim of subrogation to third party funds due to its intentional deception of the Industrial Commission"; and (2) that "the . . . Commission may, standing in the shoes of the Superior Court Judge, . . . distribute the proceeds under N.C. Gen. Stat. Section 97-10.2(j), which allows the presiding judge to exercise complete discretion as to the division of the third party funds between the employee and the employer." The Commission further concluded that even if the employer were entitled to subrogation, it was not entitled to a claim to the $70,000 paid by the employer's underinsurance carrier. Finally, the Commission concluded that the employer was in no event entitled to subrogation "in regard to the $9,061.93 paid to International Rehabilitation Associates (IRA) since the employer failed to carry its burden of proving that services provided by IRA constituted medical treatment or supplies as defined in N.C. Gen. Stat. Section 97-25."

---

The issues are whether (I) the trial judge, who was requested pursuant to N.C. Gen. Stat. § 97-10.2(j) to distribute proceeds of a third party recovery between the employer and the employee, has jurisdiction to enter an order transferring the matter to the Commission; (II) the Commission is governed by N.C. Gen. Stat. § 97-10.2(j) or N.C. Gen. Stat. § 97-10.2(f); (III) the employer is entitled to subrogation for the $70,000 paid by its underinsurance carrier; and (IV) the employer is entitled to subrogation for the $9,061.93 paid for the employee's rehabilitation.

I

[1]   The payor of benefits under the Workers' Compensation Act is generally entitled to reimbursement from the proceeds received from the third party tortfeasor. 2A Arthur Larson, *The Law of Workmen's Compensation* § 74.31(a), at 14-481 (1993). The amount of reimbursement, if any, and the method for seeking that reimbursement is determined by statute. In North Carolina, N.C. Gen. Stat. § 97-10.2 is the relevant statute, and on 13 June 1990, the date the trial court heard the motion for distribution, that statute read in pertinent part:

(f) (1) If the employer has filed a written admission of liability for benefits under this Chapter with, or if an award final in nature in favor of the employee has been entered by the Industrial Commission, then any amount obtained by any person by settlement with, judgment against, or otherwise from the third party by reason of such injury or death shall be disbursed by order of the Industrial Commission for the following purposes and in the following order of priority:

a. First to the payment of actual court costs taxed by judgment.

b. Second to the payment of the fee of the attorney representing the person making settlement or obtaining judgment, and except for the fee on the subrogation interest of the employer such fee shall not be subject to the provisions of § 90 of this Chapter but shall not exceed one third of the amount obtained or recovered of the third party.

c. Third to the reimbursement of the employer for all benefits by way of compensation or medical treatment expense paid or to be paid by the employer under award of the Industrial Commission.

d. Fourth to the payment of any amount remaining to the employee or his personal representative.

(2) The attorney fee paid under (f)(1) shall be paid by the employee and the employer in direct proportion to the amount each shall receive under (f)(1)c and (f)(1)d hereof

and shall be deducted from such payments when distribution is made.

. . .

(j) In the event that a judgment is obtained which is insufficient to compensate the subrogation claim of the Workers' Compensation Insurance Carrier, or in the event that a settlement has been agreed upon by the employee and the third party when said action is pending on a trial calendar and the pretrial conference with the judge has been held, either party may apply to the resident superior court judge of the county in which the cause of action arose or the presiding judge before whom the cause of action is pending, for determination as to the amount to be paid to each by such third party tort-feasor. If the matter is pending in the federal district court such determination may be made by a federal district court judge of that division.

N.C.G.S. § 97-10.2 (1985).

Thus under the statute, the distribution issue can be decided in some instances by either the Commission or the trial court, with "a different standard for disbursement when the case is before the Superior Court than that for cases before the Industrial Commission." *Pollard v. Smith*, 90 N.C. App. 585, 588, 369 S.E.2d 84, 86 (1988), *rev'd on other grounds*, 324 N.C. 424, 378 S.E.2d 771 (1989). Under subsection (j), as it existed on 13 June 1990, the trial court had jurisdiction if: (1) the proceeds from the third party tortfeasor were "insufficient to compensate" the employer for compensation paid; or (2) if the employee and the third party tortfeasor had settled the employee's claim against the tortfeasor at a time when the action was "pending on a trial calendar and the pretrial conference with the judge [had] been held."[1] Otherwise, the Commission had exclusive jurisdiction to determine the distribution issue.

In this case the record does not reveal that, at the time the parties settled their claim with the tortfeasor on 11 June 1990, the case was pending on a trial calendar and that a pretrial con-

---

1. A 1991 amendment to subsection (j), effective 1 October 1991, removed the requirement that the settlement occur at a time when the case was calendared and after the pretrial conference.

ference had been held. The record does reveal that the settlement of $170,000 was sufficient to fully compensate the employer for monies paid to the employee pursuant to the Workers' Compensation Act. Thus on this record, the trial court did not have jurisdiction, on 13 June 1990, under the provisions of subsection (j) to distribute the $170,000. Exclusive jurisdiction was therefore in the Commission.

## II

[2] Once the employee's request for an order of distribution was before the Commission, as it was in June of 1990, the authority of the Commission to distribute the proceeds of the employer-employee settlement with the tortfeasor was governed by subsection (f) as it then existed.[2] The Commission did not, as it suggests, stand "in the shoes" of the trial judge and have the authority to make a distribution pursuant to subsection (j). The authority to distribute pursuant to subsection (j) is reserved for the trial court alone, and even if the trial court had jurisdiction under this subsection, the trial court could not confer the authority of subsection (j) on the Commission.

Furthermore, we reject estoppel as a basis for denying an employer its statutory right to the distribution of third party proceeds. The Commission is not a court of general jurisdiction; its only jurisdiction being that "conferred upon it by statute." *Bryant v. Dougherty*, 267 N.C. 545, 548, 148 S.E.2d 548, 551 (1966). The Commission's authority to allocate third party proceeds is limited to that stated by the legislature in subsection (f) and estoppel is not given as a factor to be considered. If in fact the employer has committed some fraud or made some misrepresentation in the procurement of its settlement with the employee, the employee's remedy was to seek to have the agreement set aside under the provisions of N.C. Gen. Stat. § 97-17 (1985).

## III

[3] This Court recently held that an employer who has paid workers' compensation benefits to its employee is entitled to a lien on the employee's underinsured motorist benefits received by the employee

---

2. Subsection (f) was also amended in 1991, but the amendments were not significant, and even if the amended version applied to this case, the result would be no different.

in an action by the employee against the tortfeasor. *Ohio Casualty Group v. Owens*, 99 N.C. App. 131, 136, 392 S.E.2d 647, 650, *disc. rev. denied*, 327 N.C. 484, 396 S.E.2d 614 (1990). The Commission in this case concluded that *Ohio Casualty* was not applicable to the facts of this case because "we are faced with the proceeds of an *employer's* underinsured motorist policy." This distinction is unimportant. The employer in this case argues that if the employee's underinsured benefits are subject to distribution pursuant to N.C. Gen. Stat. § 97-10.2, it necessarily follows that the employer's underinsured benefits are subject to a subrogation claim by the employer. We agree.

The Commission further noted "in passing that the *Ohio Casualty* case fails to follow the clear majority result of courts in other states." Whether our opinion in *Ohio Casualty* is the majority view in this country is immaterial. It is the law of this state and until overruled by our Supreme Court or abrogated by the legislature, it is binding on the Commission.

## IV

[4] N.C. Gen. Stat. § 97-10.2(f)(1)c provides that reimbursement may be had by the employer "for all benefits by way of compensation or medical compensation expense[s] paid" for the employee. A party claiming a right to reimbursement under this statute must show

> pursuant to N.C.G.S. 97-25, (1) that the treatment provided was in the form of medical treatment, surgical treatment, hospital treatment, nursing services, medicines, sick travel, rehabilitation services, or other treatment including medical and surgical supplies *and* (2) that the treatment provided was reasonably required for at least one of three purposes, namely, to effect a cure, give relief, or lessen the period of the plaintiff's disability.

*Roberts v. ABR Associates, Inc.*, 101 N.C. App. 135, 142, 398 S.E.2d 917, 920 (1990) (emphasis in original). The Commission must make findings of fact regarding these matters. *Id.* In this case, as in *Roberts*, the Commission did not make the necessary findings and on remand the Commission will be required to make the necessary findings and enter a conclusion supported by the findings.

The order of the Commission is accordingly reversed and remanded to the Commission for entry of an order of distribution consistent with this opinion and N.C. Gen. Stat. § 97-10.2(f).

Reversed and remanded.

Judges MARTIN and JOHN concur.