# COURT OF APPEALS

OF

## NORTH CAROLINA

AT

### RALEIGH

GABRIELLA MURRAY HIEB AND ROBERT NELSON HIEB, PLAINTIFFS V.
WOODROW LOWERY, DEFENDANT

No. COA98-102

(Filed 6 July 1999)

**1. Workers' Compensation— lien on UIM benefits—motion for accounting—jurisdiction of trial court**

The trial court had jurisdiction under N.C.G.S. § 1-298 to determine a workers' compensation carrier's motion for an accounting of judgment proceeds paid by plaintiff's UIM carrier and disbursed by the clerk of court, although one judge's order setting the amount of the workers' compensation lien was reversed on appeal, where the trial court exercised jurisdiction to effect a prior order and appellate rulings that the compensation carrier was entitled to a lien against the UIM proceeds for "all amounts paid or to be paid" to plaintiff as workers' compensation benefits.

**2. Appeal and Error— law of the case—workers' compensation lien**

It is the law of this case that a workers' compensation carrier is entitled to a compensation lien on judgment proceeds in the amount of the total workers' compensation "paid or to be paid" to the injured employee where both the Supreme Court and the Court of Appeals held in prior appeals that the carrier was enti-

1

tled to this lien pursuant to an unappealed superior court judgment in the employee's action against the tortfeasor.

**3. Workers' Compensation— judgment proceeds—UIM payment—distribution—jurisdiction in Industrial Commission**

The Industrial Commission, rather than the superior court, had exclusive jurisdiction over the distribution of proceeds recovered by an injured employee from a third-party tortfeasor and paid pursuant to a UIM policy where the judgment exceeded the amount of the workers' compensation carrier's judgment lien and the parties did not reach a settlement. N.C.G.S. § 97-10.2(f).

**4. Workers' Compensation— attorney fees—judgment proceeds—jurisdiction in Industrial Commission**

An award of attorney fees from judgment proceeds recovered by an injured employee from a third-party tortfeasor was within the exclusive jurisdiction of the Industrial Commission, and an award of attorney fees by the trial court was improper.

**5. Workers' Compensation— judgment proceeds—premature distribution by attorney—personal liability of attorney**

The trial court did not err in holding the attorney who represented a workers' compensation claimant in an action against the third-party tortfeasor personally liable for the repayment of judgment proceeds the attorney prematurely disbursed from his trust account to his clients and himself where the attorney assured a judge that he would take full responsibility for funds in his possession; the attorney knew that, pursuant to prior orders and appellate decisions, the workers' compensation carrier had a lien on the proceeds for compensation "paid or to be paid" to claimant and that the amount of the lien was in dispute, and no Industrial Commission order for counsel fees had been entered.

**6. Interest— workers' compensation lien—prejudgment and post-judgment interest**

A workers' compensation carrier's lien on judgment proceeds from the claimant's action against the third-party tortfeasor is neither derived from an action in contract nor from an amount "designated by the fact finder as compensatory damages" within the meaning of N.C.G.S. § 24-5; therefore, the carrier was not entitled to prejudgment interest on the amount of its lien. Nor does the lien represent money damages so as to justify an award of post-judgment interest.

**HIEB v. LOWERY**

[134 N.C. App. 1 (1999)]

Appeal by plaintiffs Gabriella Murray Hieb, Robert Nelson Hieb, and Charles G. Monnett, III, from orders filed 5 May 1997 and 29 October 1997 by Judge Dennis J. Winner in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 September 1998.

*Charles G. Monnett, III, for plaintiffs-appellants Gabriella Murray Hieb and Robert Nelson Hieb.*

*Poyner & Spruill, L.L.P., by Cecil W. Harrison, Jr., and Laura B. Russell, for plaintiff-appellant Charles G. Monnett, III.*

*Dean & Gibson, by Rodney Dean, for defendant-appellee St. Paul Fire and Marine Company.*

JOHN, Judge.

Plaintiffs appeal the trial court's grant of defendant's "Motion for Judicial Assistance," and assert the trial court erred, *inter alia*, in: 1) "determin[ing] [Gabriella Hieb's] and her employer's workers' compensation insurance carrier's respective rights to judgment proceeds, and order[ing] how those judgment proceeds were to be disbursed"; 2) holding that attorney's fees paid to [Charles G. Monnett, III (Monnett)] were not proper; 3) "holding [Monnett] personally liable for the repayment of judgment proceeds"; and 4) requiring Mrs. Hieb and "her attorney to pay interest on a worker's compensation lien." We affirm in part, vacate in part, and remand with instructions.

Pertinent facts and procedural history include the following: On 20 July 1990, plaintiffs Gabriella Hieb (Mrs. Hieb) and her husband, Robert Hieb, filed suit against defendant Woodrow Lowery and unnamed defendant Hartford Accident and Indemnity Company (Hartford), Mrs. Hieb's underinsured motorist (UIM) insurance carrier. Plaintiffs sought damages for personal injury and loss of consortium resulting from a 17 October 1992 automobile collision in which Mrs. Hieb was injured while in the scope and course of her employment by Howell's Child Care Center. At trial during the 12 October 1992 Civil Session of Mecklenburg County Superior Court, the jury returned a verdict against defendants and awarded Mrs. Hieb $1,279,000.00 and her husband the sum of $40,000.00.

The 20 November 1992 judgment of the trial judge, Judge Robert E. Gaines (the judgment of Judge Gaines), included the following findings of fact:

6. St. Paul Fire and Marine [(St. Paul), the workers' compensation carrier for plaintiff's employer,] contends that it is entitled to a worker's [sic] compensation lien pursuant to North Carolina General Statute[s] [s]ection 97-10.2 against any amounts payable to Plaintiff Gabriella Murray Hieb under the Hartford policy.

7. The Plaintiffs have instituted a second action against St. Paul . . . and Hartford . . . to determine the respective rights of the parties to the benefits of the Hartford underinsured motorist coverage and to determine the amount of such coverage.

8. That on or about August 28, 1992, an order was entered in that action by the Honorable Robert P. Johnston which holds that the [sic] Hartford is allowed to reduce its limits by the amount of worker[s'] compensation paid or to be paid to Plaintiff and further holding that the proceeds of the Hartford underinsured policy are subject to the lien of [St. Paul] pursuant to North Carolina General Statute[s] [s]ection 97-10.2. That action is now on appeal to the North Carolina Court of Appeals.

Judge Gaines thereupon ordered that St. Paul was entitled to a lien against proceeds of the Hartford UIM policy (the Hartford proceeds) for "all amounts paid or to be paid" to plaintiff as workers' compensation benefits. Plaintiffs did not pursue an appeal of the judgment of Judge Gaines.

As referenced in that judgment, plaintiffs had filed a 4 March 1991 action against Hartford and St. Paul seeking a declaratory judgment determining the rights of the parties to the Hartford proceeds. Hartford contended its policy contained language allowing it to reduce its policy limits by the amount of any workers' compensation benefits paid or to be paid to Mrs. Hieb. St. Paul disagreed, maintaining it was entitled to a lien against the Hartford proceeds.

In this second action, Judge Robert P. Johnston entered a 28 August 1992 order (Judge Johnston's order), permitting reduction of Hartford's policy limits by the amount of workers' compensation paid or to be paid to Mrs. Hieb and according St. Paul a lien against the Hartford proceeds for "all amounts paid or to be paid to [Mrs. Hieb]." Judge Johnston's order further provided that:

[a]ny payments which may be made by [Hartford], pursuant to its underinsured motorist coverage, shall be disbursed subject to the provisions of N.C.G.S. § 97-10.2.

Plaintiffs appealed Judge Johnston's order to this Court. In the first of multiple opinions involving plaintiffs, we reversed the provision of the order allowing Hartford to reduce its UIM policy limits, but affirmed that portion pertaining to St. Paul's workers' compensation lien against the Hartford proceeds. *See Hieb v. St. Paul Fire & Marine Ins. Co.*, 112 N.C. App. 502, 435 S.E.2d 826 (1993) (*Hieb I*), *overruled on other grounds, McMillian v. N.C. Farm Bureau Mutual Ins. Co.*, 347 N.C. 560, 495 S.E.2d 352 (1998). Specifically, we held St. Paul was entitled to a lien on "all amounts paid or to be paid to [Mrs. Hieb]" from the Hartford proceeds because

> N.C. General Statute Section 97-10.2 provides for the subrogation of the workers' compensation insurance carrier . . . to the employer's right, upon reimbursement of the employee, to any payment, including uninsured/underinsured motorist insurance proceeds, made to the employee by or on behalf of a third party as a result of the employee's injury.

*See id.* at 507, 435 S.E.2d at 828 (quoting *Bailey v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 47, 54, 434 S.E.2d 625, 630 (1993), *overruled on other grounds, McMillian*, 347 N.C. 560, 495 S.E.2d 352 (1998)); *see also* N.C.G.S. § 97-10.2 (1991). *Hieb I* was not further appealed.

On or about 20 December 1993 and pursuant to Judge Johnston's order, our decision in *Hieb I*, and the judgment of Judge Gaines, Hartford tendered its UIM policy limits ($475,000.00) to the Office of the Mecklenburg County Clerk of Superior Court (the Clerk). As of 18 December 1993, St. Paul had paid $259,042.77 in workers' compensation benefits to Mrs. Hieb. However, plaintiffs and St. Paul disagreed as to disbursement of the Hartford proceeds, the latter contending no portion thereof could be disbursed either to Mrs. Hieb or her husband until the workers' compensation lien of St. Paul was calculated and satisfied in full.

Plaintiffs consequently filed a Motion to Modify Judgment, Enforce Judgment and Set Workers' Compensation Lien. By order entered 28 July 1994, Judge Claude Sitton (Judge Sitton's order), acting pursuant to N.C.G.S. § 97-10.2, ruled that St. Paul was entitled to recover $241,677.77 as full satisfaction of any workers' compensation lien it might have on benefits paid or to be paid to Mrs. Hieb, and that the remaining Hartford proceeds were to be paid to plaintiffs. St. Paul appealed Judge Sitton's order to this Court. *See Hieb v. Lowery*, 121

N.C. App. 33, 464 S.E.2d 308 (1995) (*Hieb II*), *aff'd*, 344 N.C. 403, 474 S.E.2d 323 (1996).

On 12 August 1994, while awaiting disposition of *Hieb II*, St. Paul contacted

> all treating physicians and advised that [it] would no longer pay plaintiff's medical expenses . . . [and thereafter] stopped paying plaintiff her permanent and total disability compensation.

Further, St. Paul filed with the North Carolina Industrial Commission (the Commission) a 4 October 1994 "Motion to Stop Payment of Compensation and Motion to Stay Distribution of Third Party Proceeds." On 12 May 1995, the Full Commission filed an opinion and award requiring, *inter alia*, St. Paul to resume payments to Mrs. Hieb. The Commission further stated in pertinent part:

> 7. Deputy Commissioner [Nance] considered [St. Paul's] Motion to Stop Payment of Compensation and Motion to Stay Distribution of Third Party Proceeds. Deputy Commissioner Nance, in an order filed on October 4, 1994, determined that the Industrial Commission does not have jurisdiction to act now, and effectively overrule Judge Sitton, until such time as the Court of Appeals rules on defendants' appeal from Judge Sitton's Order.

> CONCLUSIONS OF LAW

> 1. The Industrial Commission does not have jurisdiction over the disbursement of the third-party funds [*i.e.*, the Hartford proceeds] in this case.

> . . . The Industrial Commission is not a court of general jurisdiction, and any jurisdiction it exercises must be conferred by statute. The statutory authority for distribution of third-party funds for the Industrial Commission is [G.S. §] 97-10.2(f) . . . . The Industrial Commission has no authority to distribute funds under [G.S. §] 97-10.2(j). Authority for distribution of funds under that subsection is granted exclusively to the General Court of Justice. The Court must accept jurisdiction to distribute funds when: a) Judgment is obtained which is insufficient to compensate the subrogation claim of the workers' compensation insurance carrier; or b) There is a settlement, and the parties apply to the Superior Court judge for distribution for determination of how the funds ought to be distributed.

2. [Judge Sitton] in the instant case decided that the judgment was insufficient to compensate the subrogation claim of the workers' compensation carrier and assumed jurisdiction over the distribution of funds under [G.S. §] 97-10.2(j). Whether the judge's exercise of discretion was correct or incorrect is not a question for the Industrial Commission to decide. The matter is properly on appeal to the Court of Appeals at this time, and the Industrial Commission will abide accordingly with any of the Court's determinations or directions with regard to this matter.

St. Paul subsequently appealed the Commission's opinion and award to this Court. *See Hieb v. Howell's Child Care Center*, 123 N.C. App. 61, 472 S.E.2d 208 (*Hieb III*), *disc. review denied*, 345 N.C. 179, 479 S.E.2d 204 (1996).

On 5 December 1995, a divided panel of this Court in *Hieb II* reversed Judge Sitton's order, holding that, in view of Judge Johnston's order specifying that "St. Paul could assert a lien pursuant to § 97-10.2 against all of the [Hartford] proceeds," *Hieb II*, 121 N.C. App. at 38, 464 S.E.2d at 311, the trial court was without authority to exercise its discretion under G.S. § 97-10.2(j) to determine the amount of the lien and order the balance of the Hartford proceeds to be paid to plaintiffs. *Id.* We stated that the trial court could not modify the order of another superior court judge because the "judgment" exceeded the amount necessary to reimburse the workers' compensation insurance carrier and that the court was prohibited from speculating upon what might happen in the future. *Id.* at 37-8, 464 S.E.2d at 311.

On appeal, our Supreme Court elaborated that but two events "trigger the authority of a judge to exercise discretion in determining or allocating the amount of lien or disbursement" under G.S. § 97-10.2(j):

(1) a judgment insufficient to compensate the subrogation claim of the workers' compensation insurance carrier or (2) a settlement.

*Hieb v. Lowery*, 344 N.C. 403, 409, 474 S.E.2d 323, 326-27 (1996) (*Lowery*). In that neither event was present in *Hieb II*, the Supreme Court upheld our reversal of Judge Sitton's order. *Id.* at 409-10, 474 S.E.2d at 326-27.

Subsequently, on 2 July 1996, this Court issued its opinion in *Hieb III*, addressing St. Paul's appeal from the Commission's

Opinion and Award. We affirmed the action of the Commission, but noted that:

> [w]ithout the benefit of our decision in *Hieb II*, the Commission erred in finding that it did not have jurisdiction over the disbursement of the third party funds [since] . . . we found in *Hieb II* that the Commission, not the superior court, has jurisdiction to disburse third party proceeds in this case . . . .

*Hieb III*, 123 N.C. App. at 66-67, 472 S.E.2d at 212.

During the pendency of these multiple appeals, Monnett secured from the Clerk disbursement of the proceeds deposited by Hartford, $424,076.17 thereof being designated as payable to Monnett as attorney for Mrs. Hieb, and $50,923.83 payable to Monnett as attorney for Robert Hieb. Monnett placed the former in an interest-bearing certificate of deposit account in his name as attorney for Mrs. Hieb, and the latter in his law firm's regular trust account.

Regarding these funds, Monnett states in his affidavit attendant to the instant appeal:

> 8. At the time the funds were deposited in my trust account and in the certificate of deposit, and at all times since, there has been no legitimate question regarding my attorney's fee. As to St. Paul's portion of the recovery, in the November 20, 1992, judgment, Judge Gaines determined that [I] was allowed "an attorney's fee of 33.33% of all amounts . . . paid to [St. Paul]." As to the Hieb's portion of the recovery, I had . . . [a contingency fee agreement] which allowed an attorney's fee of one-third of all amounts recovered on behalf of the Hiebs. . . . St. Paul did not timely seek review of my attorney's fees by an appeal of The judgment of Judge Gaines. . . .
>
> 9. On March 29, 1994, in accordance with Judge Gaines' Order and the fee agreement with the Hiebs, I withdrew $142,329.61 from the certificate of deposit . . . for attorney fees.
>
> . . . .
>
> 11. After entry of Judge Sitton's Order, [the Hiebs] requested that I pay them their portion of the judgment proceeds to which they were entitled to pursuant to Judge Sitton's order.

12. On July 26 and 28, 1994, almost two weeks after the entry of Judge Sitton's order and in accordance therewith, I disbursed the remaining judgment proceeds as follows:

| | | |
|---|---|---|
| 7/26/94 | [Mrs. Hieb] | $10,000.00 |
| 7/28/94 | [Monnett] | $18,344.66 |
| 7/28/94 | [Judgment lien against plaintiffs] | $5,112.50 |
| 7/28/94 | [Lien for a loan to plaintiffs] | $3,000.00 |
| 7/28/94 | [St. Paul] [Representing $241,677.77 less attorney fee of $80,551.20] | $161,126.57 |
| 7/28/94 | [The Hiebs] | $115,964.72 |

By letter to Monnett dated 10 September 1996 and citing our decision in *Hieb II*, St. Paul requested that

all of the proceeds which were taken from the Clerk of Superior Court be returned to the [C]lerk for deposit within ten days less [$161,126.57,] the amount which has already been reimbursed to St. Paul.

Monnett refused, thus bringing us chronologically to the subject of the instant appeal.

St. Paul thereupon filed a "Motion for Judicial Assistance" (St. Paul's motion) 25 March 1997 seeking an accounting by plaintiffs and Monnett regarding the funds disbursed by the Clerk to Monnett. In an Order filed 5 May 1997, Judge Dennis Winner (Judge Winner's order I) ruled the trial court was accorded jurisdiction over St. Paul's motion by N.C.G.S. § 1-298 (1996) in order

to effect the rulings of the Court of Appeals and the Supreme Court and . . . the inherent power to enforce the Orders of this Court; in this case, the ruling of Judge Robert Johnston.

On 29 October 1997, Judge Winner amplified order I in a directive (Judge Winner's order II) providing in pertinent part as follows:

2. . . . Both the Order by Judge Johnston and the Judgment by Judge Gaines specifically directed that St. Paul was entitled to a workers' compensation lien for all workers' compensation "paid or to be paid to the Plaintiff." These Orders are the law of this case, and this Court is not willing to change the prior rulings of either Judge . . . .

3. . . . A total of $475,000.00 of money paid by the UIM carrier (Hartford), which was paid in to the Clerk . . . and subsequently taken by Mr. Monnett, is subject to a lien by St. Paul for all payments made and to be made for workers' compensation benefits in accordance with the Order of Judge Johnston, Judge Gaines, two Court of Appeals orders and the Order of the North Carolina Supreme Court.

The prior Order of Judge Sitton accounted for $241,677.77 being disbursed to or on behalf of St. Paul. Of that amount, $161,126.57 was paid directly to St. Paul on July 28, 1994, and $80,551.20 was paid as attorney fees to [Monnett]. This leaves a remaining balance of $233,322.23. Two-thirds of that amount ($155,548.15) is the amount potentially recoverable by St. Paul from the remaining funds after allowing for a one-third attorney's fee.

[The] Order of this Court . . . require[s] that only the amount of $155,548.15, with interest at the rate of eight percent from July 28, 1994 until paid, be deposited with the Clerk . . . and to be disbursed in the manner set forth [herein]. . . .

. . . .

6. . . . .[Moreover, Monnett] has requested that the liability for replacement of the funds be solely that of Mr. and Mrs. Hieb, and that he be relieved of any obligation for payment of these funds. The Court finds from this record that [Monnett] took these funds from the Clerk . . . without the knowledge or consent of St. Paul, prior to the issuance of any Order by Judge Sitton, and refused the requests by St. Paul to return the funds to the Clerk of Court. The Court finds that [Monnett] created a fiduciary obligation to St. Paul by the taking of these funds, and that he, thus, created an obligation to St. Paul to account for such funds.

Regarding Monnett's attorney fees, Judge Winner stated:

4. This Court finds that under the provisions of G.S. § 97-10.2 any determination with respect to the payment of counsel fees must be made by the Industrial Commission and all attorneys' fees must be approved by the Industrial Commission. G.S. § 97-10.2(j) makes no provision for calculation or disbursement of attorneys' fees. It would appear to this Court that no Order has ever been entered by the North Carolina Industrial Commission approving the disbursement of attorneys' fees from this recovery. The Court

finds that unless and until such an Order from the North Carolina Industrial Commission is entered, the disbursement of attorneys' fees to [Monnett] was not proper.

Plaintiffs and Monnett filed timely notice of appeal from Judge Winner's order I and order II respectively.

[1] Preliminarily, we address plaintiffs' assertion that Judge Winner's order I "holding that [the trial court] had jurisdiction [to enter an order] pursuant to N.C. Gen Stat. § 1-298 [was] in error." We conclude plaintiffs are mistaken.

G.S. § 1-298 states that

[i]n civil cases, at the first session of the superior or district court after a certificate of the determination of an appeal is received, if the judgment is affirmed the court below shall direct the execution thereof to proceed, and if the judgment is modified, shall direct its modification and performance . . . .

Plaintiffs maintain Judge Winner's order I constituted error in light of the reversal of Judge Sitton's order by this Court, *see Hieb II*, 121 N.C. App. 33, 464 S.E.2d 308, and because G.S. § 1-298 "has no application to a decision of this Court *reversing* the judgment of the lower court." *D & W, Inc. v. Charlotte*, 268 N.C. 720, 722, 152 S.E.2d 199, 202 (1966). Plaintiffs' argument is misdirected.

In focusing upon Judge Sitton's order, plaintiffs fail to account for Judge Winner's explicit finding that the trial court had "jurisdiction pursuant to [G.S. §] 1-298 to effect the rulings of the Court of Appeals and the Supreme Court and . . . *the ruling of Judge Robert Johnston*" (emphasis added). As opposed to Judge Sitton's order which was rendered invalid on appeal, *see Hieb II*, 121 N.C. App. at 39, 464 S.E.2d at 312; *see also D & W, Inc.*, 268 N.C. at 722, 152 S.E.2d at 202 ("[a] reversal, when filed in the lower court, automatically sets the lower court's decision aside without further action by that court") (citation omitted), Judge Winner sought to effect Judge Johnston's order which had been modified on appeal, *see Hieb I*, 112 N.C. App. at 506-07, 435 S.E.2d at 828, and which provided for a lien by St. Paul on "*all* [workers' compensation] amounts paid or to be paid" to Mrs. Hieb. *See id.* at 506, 435 S.E.2d at 828 (emphasis added); *see also Lowery*, 344 N.C. at 408, 474 S.E.2d at 326 (observing that this Court in *Hieb I* "unanimous[ly] . . . affirm[ed] that portion of Judge Johnston's order relating to the workers' compensation lien of St. Paul"). The trial court in Judge Winner's order I thus properly assumed jurisdiction of St.

Paul's motion under G.S. § 1-298 because Judge Johnston's prior order, albeit modified, was, in the words of the trial court, "still in effect."

Plaintiffs next assert the trial court erred in "determin[ing] the Hiebs' and St. Paul's respective rights to judgment proceeds and order[ing] the disbursement of those judgment proceeds." The latter portion of plaintiffs' argument has merit.

Without doubt, it is well established that "one Superior Court judge . . . may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." *Calloway v. Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972). Further, "after an appeal the action becomes final and conclusive." *In re Griffin*, 98 N.C. 225, 227, 3 S.E. 515 (1887). Accordingly, any trial court action which varies,

> disregard[s] the decree of this [appellate court], . . . [or] attempt[s] to postpone its enforcement [is] beyond [the trial court's] authority and [its] order to that effect is a nullity.

*Severance v. Ford Motor Co.*, 105 N.C. App. 98, 101, 411 S.E.2d 618, 620, *disc. review denied*, 331 N.C. 286, 417 S.E.2d 255 (1992) (quoting *D & W, Inc.*, 268 N.C. at 724, 152 S.E.2d at 203).

[2] Concerning plaintiffs' attack upon Judge Winner's determination of the entitlement of St. Paul to a lien on the Hartford proceeds and the amount of that lien, we note our Supreme Court resolved this identical argument in *Lowery* as follows:

> Plaintiffs argue that the issue previously decided by Judges Gaines and Johnston was whether [St. Paul] could *assert* a lien . . . against the [Hartford] proceeds . . . while the issue before Judge Sitton was the amount of such workers' compensation lien that should be allowed. . . .
>
> From the plain language of [Judge Gaines'] judgment, it is clear that the amount of the lien is to be the total of all amounts *paid or to be paid* to plaintiff as workers' compensation benefits. . . . Thus, the issue of amount was dealt with and decided . . . prior to plaintiffs presenting the matter to Judge Sitton.

*Lowery*, 344 N.C. at 408, 474 S.E.2d at 326. Likewise, in *Hieb I* this Court held that "St. Paul is entitled to a workers' compensation lien against all amounts paid or to be paid to Mrs. Hieb by Hartford

pursuant to its UIM coverage." *Hieb I,* 112 N.C. App. at 507, 435 S.E.2d at 828.

Plaintiffs' arguments to the contrary, it is indisputably the law of this case that St. Paul is entitled to a workers' compensation lien in the amount of the total workers' compensation "paid or to be paid to the Plaintiff." *See Transportation, Inc. v. Strick Corp.,* 286 N.C. 235, 239, 210 S.E.2d 181, 183 (1974) ("[t]he decision by the Supreme Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal"); *see also Stone v. Martin,* 85 N.C. App. 410, 417, 355 S.E.2d 255, 259, *disc. review denied,* 320 N.C. 638, 360 S.E.2d 105 (1987) ("[o]ur decision in the previous appeal constitutes the law of the case").

[3] However, plaintiff is on surer grounds in asserting the trial court had no authority to direct disbursement of the Hartford proceeds. An employer or its insurance carrier subrogee, St. Paul herein, is entitled to seek reimbursement under the Workers' Compensation Act from damages recovered by an employee from a third party tortfeasor. *See Buckner v. City of Asheville,* 113 N.C. App. 354, 358, 438 S.E.2d 467, 469, *disc. review denied,* 336 N.C. 602, 447 S.E.2d 385 (1994). "The amount of reimbursement, if any, and the method for seeking that reimbursement is determined by . . . N.C.G.S. § 97-10.2." *Id.*

G.S. § 97-10.2 provides in relevant part:

(f)(1) If the employer has filed a written admission of liability for benefits under this Chapter with, or if an award final in nature in favor of the employee has been entered by the Industrial Commission, then any amount obtained by any person by settlement with, judgment against, or otherwise from the third party by reason of such injury or death shall be disbursed by order of the Industrial Commission for the following purposes and in the following order of priority:

    a.  First to the payment of actual court costs . . . .

    b.  Second to the payment of the fee of the attorney making settlement or obtaining judgment. . . .

    c.  Third to the reimbursement of the employer for all benefits by way of compensation of medical compensation expense paid or to be paid by the employer under award of the Industrial Commission.

> d. Fourth to the payment of any amount remaining to the employee . . . .

(j) Notwithstanding any other subsection in this section, in the event that a judgment is obtained which is insufficient to compensate the subrogation claim of the Workers' Compensation Insurance Carrier, or in the event that a settlement has been agreed upon by the employee and the third party, either party may apply to the resident superior court judge . . . to determine the subrogation amount. . . . [T]he judge shall determine, in his discretion, the amount, if any, of the employer's lien and the amount of cost of the third-party litigation to be shared between the employee and employer. . . .

G.S. § 97-10.2(f)(1), (j).

Under Subsection (f), therefore, the Commission is specifically granted exclusive authority to distribute third party proceeds subject to Subsection (j) which, when applicable, accords that authority to the Superior Court. *See Buckner*, 113 N.C. App. at 359, 438 S.E.2d at 470. Further, as noted earlier,

> the two events which will trigger the authority of a judge to exercise discretion [under subsection (j)] in determining or allocating the amount of . . . disbursement are (1) a judgment insufficient to compensate the subrogation claim of the workers' compensation insurance carrier or (2) a settlement.

*Lowery*, 344 N.C. at 409, 474 S.E.2d at 326-27.

At the time of Judge Winner's order II, the judgment of Judge Gaines based upon the jury verdict in favor of Mrs. Hieb remained greater than the amount of St. Paul's lien. The parties also had not reached a settlement. Therefore, neither event "trigger[ing]" the authority of the trial court to disburse the Hartford proceeds had occurred, and Judge Winner lacked authority to order such disbursements under G.S. § 97-10.2(j). *See Lowery*, 344 N.C. at 409-10, 474 S.E.2d at 327 (trial court had no authority for order under [G.S. §] 97-10.2(j) because of absence of either statutory event). In addition, Judge Winner's order II deviates from Judge Johnston's order directing that "[a]ny payments . . . made by [Hartford] . . . be disbursed subject to the provisions of [G.S. §] 97-10.2," under which disbursement by the Commission is mandated in the absence of either statutorily prescribed event "triggering" the authority of the trial court.

In short, as we observed in *Hieb III*,

> the Industrial Commission, not the superior court, has exclusive
> jurisdiction over distribution of the proceeds recovered from the
> third party tortfeasor in this case.

*Hieb III*, 123 N.C. App. at 66, 472 S.E.2d at 212. Accordingly, the
sole mechanism for disbursement of the Hartford proceeds in the
case *sub judice* lies with the Industrial Commission acting pursuant
to G.S. § 97-10.2(f), and Judge Winner's order II directing disburse-
ment of the Hartford proceeds was in excess of the court's authority
and must be vacated.

[4] Plaintiffs next attack the trial court's ruling regarding counsel
fees to be paid Monnett. Specifically, plaintiffs contend this Court
previously addressed "the issue regarding attorneys' fees . . . [and]
determined [it] to be untimely." Moreover, plaintiffs also advance the
notion that because the judgment of Judge Gaines, which was not
appealed, provided that "Monnett is entitled to an attorney's fee of
33.33% of all amounts paid to St. Paul," Judge Winner was without
authority to "reconsider this issue and overrule prior Superior Court
orders." Plaintiffs' argument misses the mark.

In *Hieb II*, this Court wrote in pertinent part:

> [St. Paul] contends that this Court should review the award of
> attorney's fees to [Monnett]. . . . As defendant has failed to ade-
> quately preserve these issues for appellate review, we need not
> address [this argument] at this juncture.

*Hieb II*, 121 N.C. App. at 39, 464 S.E.2d at 312. We thus specifically
declined to address counsel fees in *Hieb II*, and as such, our opinion
therein is of no effect regarding the counsel fees portion of Judge
Winner's order II.

Further, plaintiffs place inconsistent reliance upon the judgment
of Judge Gaines. On the one hand, plaintiffs assert the award of coun-
sel fees therein as justification for disbursement of fees to Monnett
and as the basis for claiming later error by Judge Winner. On the other
hand, plaintiffs do not appear to view as binding the provision in the
judgment of Judge Gaines that St. Paul was entitled to a lien for "all
amounts paid or to be paid" in workers' compensation to plaintiffs. As
defendant aptly observes,

> [i]t is difficult to understand what basis the plaintiffs have for
> objecting to Judge Winner's order that simply confirms the very

argument made by [Monnett] in his brief that the only body with authority to [order any disbursements of the Hartford proceeds] is the . . . Industrial Commission."

Significantly, the award of counsel fees by Judge Gaines was based in part upon his finding of fact that:

an order was entered . . . by the Honorable Robert P. Johnston [and] . . . [t]hat action is now on appeal to the North Carolina Court of Appeals. This Court is bound by the Order of Judge Johnston *unless and until said Order is modified by the Court of Appeals* or any other court of competent jurisdiction (emphasis added).

On appeal in *Hieb I*, Judge Johnston's order was indeed modified by this Court, but we did not disturb the portion thereof requiring the Hartford proceeds to "be disbursed subject to the provisions of N.C.G.S. § 97-10.2." We have held above and stated previously in *Hieb III* that it is Subsection (f) of G.S. § 97-10.2 which governs disbursement of the Hartford proceeds. *See Hieb III*, 123 N.C. App. at 66, 472 S.E.2d at 211. Therefore, "the Industrial Commission can award an attorney's fee not to exceed 'one third of the amount obtained or recovered of the third party.'" *Westmoreland v. Safe Bus, Inc.*, 20 N.C. App. 632, 634, 202 S.E.2d 605, 606 (1974) (quoting G.S. § 97-10.2(f)(1)(b)). However, "[t]his action is within the exclusive province of the Industrial Commission, [and] a [trial] court's award of attorney's fees [is] improper." *Id.*

Consistent with the directive in Judge Johnston's order that the Hartford proceeds be "disbursed subject to . . . G.S. § 97-10.2," Judge Winner properly ruled that "any determination with respect to the payment of counsel fees must be made by the Industrial Commission," and that "unless and until such an Order from the [Industrial Commission] is entered, the disbursement of attorneys' fees to [Monnett] was not proper." Because the judgment of Judge Gaines provided on its face that it was "bound" by Judge Johnston's earlier order "unless and until" modified on appeal, and because this Court indeed modified Judge Johnston's order, plaintiffs' reliance upon the judgment of Judge Gaines is ineffectual and Judge Winner did not err in his directive addressing counsel fees.

[5] Plaintiffs next assert that the trial court erred in "holding [Monnett] personally liable for the repayment of judgment proceeds," citing our decision in *Poore v. Swan Quarter Farms, Inc.*, 119 N.C.

App. 546, 459 S.E.2d 52 (1995). Plaintiffs' reliance upon *Poore* is unavailing.

In *Poore,* we upheld the trial court's refusal to direct the plaintiffs' attorney therein to return certain rental proceeds to which the defendants were entitled. *Poore,* 119 N.C. App. at 548, 459 S.E.2d at 53. The funds had previously been released by the clerk of court to plaintiffs and said attorney. *Id.* We observed that

> plaintiffs' attorney is not a party to this action, and the trial court therefore had no authority to require him to account for the funds the plaintiffs received.

*Id.* at 549, 459 S.E.2d at 53.

However, the circumstances *sub judice* stand in marked contrast. Prior to Judge Sitton's order upon which plaintiffs rely as justifying the majority of the disbursements to Monnett, the latter assured Judge Sitton by letter that:

> I am the Plaintiffs' attorney of record in this case. . . . My office routinely satisfies liens against personal injury settlement proceeds. *I take full responsibility for those funds that are in my possession.*

(emphasis added).

Further, notwithstanding plaintiffs' argument that "[t]he money was . . . distributed . . . in strict compliance with the terms . . . of a then valid Order of [Judge Sitton]," review of the record reveals that substantial funds were disbursed by Monnett prior to Judge Sitton's order. For instance, on 29 March 1994, subsequent to the orders of Judges Johnston and Gaines and our decision in *Hieb I,* each providing a lien on behalf of St. Paul for all amounts of workers' compensation "paid or to be paid" to plaintiff, Monnett "withdrew $142,329.61 from the certificate of deposit . . . for attorney's fees."

It must also be noted that the foregoing distribution occurred approximately three weeks subsequent to plaintiffs' motion before Judge Sitton to modify that provision of the judgment of Judge Gaines pertaining to the amount of St. Paul's lien and to determine disbursement of the Hartford proceeds as between plaintiffs and St. Paul. North Carolina Rule of Professional Conduct 1.15-1(e)(2) (1998) (the Rule) provides that

funds belonging in part to a client or a third party and in part presently or potentially to the lawyer . . . shall be deposited into the trust account, but the portion belonging to the lawyer shall be withdrawn when the lawyer becomes entitled to the funds unless the right of the lawyer to receive the portion of the funds is disputed . . . ."

No violation of the Rule by Monnett is suggested. Indeed, the instant record contains the 15 April 1997 no probable cause dismissal by the North Carolina State Bar of St. Paul's grievance against Monnett based upon his disbursement of the Hartford proceeds. Nonetheless, the protocol of the Rule is instructive.

In addition, the record indicates earlier distributions by Monnett of $2,500.00 on 23 December 1993 and $1,197.17 on 3 February 1994, both on behalf of Mr. Hieb. *Cf. McMillian v. N.C. Farm Bureau Mutual Ins. Co.*, 125 N.C. App. 247, 255, 480 S.E.2d 437, 441 (1997), *rev'd on other grounds*, 347 N.C. 560, 495 S.E.2d 352 (1998) (loss of consortium judgment not recoverable where judgment by primary plaintiff exhausts policy coverage). Further, on 26 July 1994, Monnett paid Mrs. Hieb $10,000. Finally, on 28 July 1994, the filing date of Judge Sitton's order, Monnett disbursed the remaining funds, including two additional checks payable to Monnett totaling $98,895.86, bringing the approximate total of counsel fees received by Monnett to $241,225.47. *See, e.g.*, G.S. § 97-10.2(f)(1)(b) (fee of attorney representing person obtaining judgment shall not exceed one-third of amount recovered of third party); *see also Hardy v. Brantley Construction Co. and Wells v. Brantley Construction Co.*, 87 N.C. App. 562, 567, 361 S.E.2d 748, 751 (1987), *rev'd on other grounds*, 322 N.C. 106, 366 S.E.2d 485 (1988) (under N.C.G.S. § 97-90, attorney's fee taken from employee's share of judgment may not exceed one-third of amount recovered).

In holding Monnett personally liable for the return of disbursed Hartford proceeds, the court in Judge Winner's order II reasoned:

[d]espite [Monnett's] knowledge that two prior Superior Court Judges had ordered that St. Paul had a lien against all proceeds, and that St. Paul had specifically requested that no disbursement of these proceeds be made which were subject to St. Paul's lien, [Monnett] issued disbursement of these funds. Considering the totality of the circumstances, the equities involved, the notice to [Monnett] of the dispute over these funds, and the conscious choice of [Monnett] to disburse the funds

notwithstanding the prior Orders of this Court and the claims by St. Paul, the Court finds that [Monnett should be held personally responsible].

In light of our holding herein requiring a Commission order prior to disbursement of counsel fees, the timing of Monnett's actual disbursements of the Hartford proceeds, and Monnett's assurance to Judge Sitton of "full responsibility" for the Hartford proceeds, we cannot say the trial court erred in its directive that Monnett be "personally liable for repayment of [the Hartford] proceeds." Plaintiffs' challenge to that portion of Judge Winner's order II is thus unfounded.

**[6]** Finally, plaintiffs except to the amount of monies ordered returned to the Clerk. Plaintiffs maintain the trial court improperly assessed interest thereon and submit the court's failure to account for certain tax and judgment liens was in error. We agree in part.

In support of their argument, plaintiffs cite our Supreme Court's decision in *Devereaux v. Burgwin*, 33 N.C. 490 (1850) and assert "that interest, as interest, is allowed when expressly given by statute or by express or implied agreement between the parties." *See id.* at 494. In this regard, we note that prejudgment interest is allowable pursuant to N.C.G.S. § 24-5 (1991) from the "date of the breach" in suits for breach of contract, and in other actions "from the date the action is instituted" upon that amount "designated by the fact finder as compensatory damages." G.S. § 24-5 (a)(b). G.S. § 24-5 also provides for post-judgment interest on judgments for money damages until the judgment is paid. *See Custom Molders, Inc. v. American Yard Products, Inc.*, 342 N.C. 133, 138, 463 S.E.2d 199, 202 (1995).

Under the specific facts herein, St. Paul's workers' compensation lien on the Hartford proceeds is neither derived from an action in contract nor from an amount "designated by the fact-finder as compensatory damages." *See* G.S. § 24-5; *cf. Bartell v. Sawyer*, 132 N.C. App. 484, 487, 512 S.E.2d 93, 95 (1999) (G.S. § 97-10.2(f)(1)(c) provides for reimbursement to defendant insurance company "for all benefits . . . paid or to be paid by the employer under award of the Industrial Commission" and "does not state that [insurance company is] entitled to any prejudgment interest").

Moreover, St. Paul's lien does not represent money damages so as to justify an award of post-judgment interest. *See Custom Molders*, 342 N.C. at 138, 463 S.E.2d at 202. There being no statutory authority

**HIEB v. LOWERY**

[134 N.C. App. 1 (1999)]

sustaining an award of interest *sub judice* nor any "express or implied agreement" between the parties as to payment of interest, *see Devereaux*, 33 N.C. at 495, the award of interest in Judge Winner's order II must be vacated.

Plaintiffs also assert error in computation of the amount to be returned based upon the trial court's failure to account for certain tax and judgment liens allegedly having priority over the lien of St. Paul. However, we note that other than copies of checks and Monnett's statement in his affidavit that said checks were paid toward the alleged liens, the record contains no evidence or device for discerning the respective priority thereof over the lien of St. Paul. Moreover, plaintiffs cite no authority for this argument, *see* N.C.R. App. P. 28(b)(5) ("assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned"), and as appellants herein, bear the burden of establishing the record on appeal. *See Mcleod v. Faust*, 92 N.C. App. 370, 371, 374 S.E.2d 417, 418 (1988). Plaintiffs' argument in this regard is thus deemed abandoned.

In sum, Judge Winner's order II is affirmed 1) as it pertains to St. Paul's entitlement to a lien referencing the Hartford proceeds "for all payments made and to be made" to Mrs. Hieb; 2) in disallowing counsel fees to Monnett; and 3) in holding Monnett personally liable for repayment of the Hartford proceeds. However, those portions of Judge Winner's order II 1) requiring disbursement of the Hartford proceeds; and 2) computing and awarding interest, are vacated. Further, this case is remanded with the instruction that the Superior Court remand to the Industrial Commission for disbursement proceedings and award of counsel fees pursuant to G.S. § 97-10.2.

Affirmed in part, vacated in part, and remanded with instructions.

Judges McGEE and HORTON concur.